UNITED STATES of America,
Plaintiff-Appellee,

v.

Jessica A. LEMAIRE,
Defendant-Appellant.

No. 83-4178
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Aug. 5, 1983.

Rehearing Denied Sept. 29, 1983.

Certiorari Denied Dec. 5, 1983.
See 104 S.Ct. 535.

---

Delphin & Granger, Frank Granger (Court-Appointed), Lake Charles, La., for defendant-appellant.

Joseph S. Cage, Jr., U.S. Atty., D.H. Perkins, Jr., Asst. U.S. Atty., Shreveport, La., for plaintiff-appellee.

Before BROWN, REAVLEY and JOLLY, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Appellant was convicted of uttering counterfeit United States notes with intent to defraud and possession of counterfeit U.S. notes with intent to defraud. 18 U.S.C. § 472. On appeal, she asserts that the district court improperly admitted extrinsic offense evidence going to issue of her intent to defraud by passing counterfeit currency. Because we find that such evidence was properly admitted, we affirm.

### Pennies from Heaven—Dollars from Xerox

On September 20, 1982, officers of the DeRidder (Louisiana) Police Department, acting on a report that a woman had passed a counterfeit twenty-dollar bill at a local service station, arrested appellant Jessica Lemaire. A subsequent search of her person and of her car uncovered $222 in legitimate currency, 17 counterfeit twenty-dollar bills placed in an envelope under the car's floor mats, and a paper bag containing a sales receipt from Brookshire's Grocery, a bottle of shampoo, and the remnants of five torn counterfeit twenty-dollar bills.

In its case in chief, the government introduced evidence that Lemaire had in her possession the bag containing the bottle of shampoo, priced at $2.09, along with a sales receipt from Brookshire's showing the purchase of an item valued at that amount, which had been paid for with a twenty-dollar bill. The receipt, dated September 20, 1982, the date of Lemaire's arrest, showed that the purchase was made a few minutes before she purchased gas at the service station. Lemaire objected to the prosecution witness' reading from the receipt on the ground that the receipt was hearsay. The court sustained the objection, but permitted the receipt to be exhibited to the jury. At the same time, the court ruled that the government could not offer into evidence the twenty-dollar counterfeit bill that was secured from Brookshire's Grocery Store the date of Lemaire's arrest.

Lemaire was found guilty of knowingly, willfully, and with intent to defraud, passing, uttering, and possessing a forged and counterfeited obligation of the United States in violation of 18 U.S.C. § 472.

### Another Day, Another Dollar

On appeal, Lemaire argues that the district court erred in allowing the prosecution witness to testify concerning "other crimes", i.e., the passing of a counterfeit bill at Brookshire's, allegedly committed by her without requiring adequate proof that the "other crimes" in fact occurred.

■ Evidence of other crimes, wrongs, or acts is generally inadmissible. F.R.Evid. 404(b). However, such evidence may be admissible for the purposes of "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* The court, in *United States v. Beechum,* 582 F.2d 898, 911 (5th Cir.1978) (en banc), *cert. denied* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979), the ovular[1] Fifth Circuit authority on the admissibility of extrinsic offense evidence, set forth a two-step test: "First it must be determined that the extrinsic offense evidence is relevant to an issue other than defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet other requirements of Rule 403." 582 F.2d at 911. Where the defendant's intent to commit the offense charged is an issue, "the relevancy of the extrinsic offense derives from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses." *Id.* Indeed, under *Beechum,* evidence of an extrinsic offense is relevant to intent only if the act in fact occurred and the defendant in fact committed it. 582 F.2d at 912.

---

1. In the interests of fair play and equality of the sexes, we use the feminine equivalent of "seminal" coined by a California court in *Medavoi v. American Savings & Loan,* 89 Cal.App.3d 244, 152 Cal.Rptr. 572, 583 n. 1 (Ct.App.1979), *opinion withdrawn* ("The feminists among us are entitled to a word other than 'seminal' ").

Thus, as the predicate to a determination that the extrinsic act is relevant, the government must offer proof establishing that the defendant committed the act. *Id.* at 912–13.

■ Appellant maintains that the district court applied an incorrect standard of proof of the commission of the extrinsic act in ruling on the admissibility of extrinsic offense evidence. When ruling on appellant's objection to testimony concerning the receipt, the court stated that there must be "substantial evidence, not a preponderance of the evidence." R. at 107. Later, when the court excluded the counterfeit bill that was passed at the grocery store, the judge stated, "There must be clear and convincing proof as to the commission of that other act before it can be shown to be part of the motive, scheme, design, plan or knowledge." R. at 132. Appellant is correct in her assertion as to the incorrectness of the latter standard of proof. The "clear and convincing proof" standard was abandoned by this court in *Beechum* when it specifically overruled *United States v. Broadway,* 477 F.2d 991 (5th Cir.1973). 582 F.2d at 910. In so holding, the court stated, "We think that *Broadway* runs afoul of the Federal Rules of Evidence by imposing on the government too strict a standard of proof. . . ." *Id.* at 912. Lemaire's contentions, therefore, support an argument in favor of the government's position that the standard of proof on admission of extrinsic evidence of other offenses is not an onerous one. Moreover, the argument suggests that the only error on the part of the district judge was in applying too *stringent* a standard of proof on admission of extrinsic offense evidence. In general, while the trial judge must find that there is sufficient evidence for a jury to conclude that the defendant committed the extrinsic act, *Beechum,* 582 F.2d at 913, the proof need not show the commission of an offense beyond a reasonable doubt. *Id.;*

*see United States v. Mortazavi,* 702 F.2d 526, 527, 528 (5th Cir.1983).

■ The trial transcript in the instant case reveals that there was sufficient evidence for the jury to have concluded that Lemaire committed the extrinsic acts. Ken Martin, an investigator for the District Attorney's office in DeRidder, testified that when he conducted a consent search of Lemaire's car he found a bag which contained a white envelope torn into pieces, along with pieces of what appeared to be twenty-dollar bills, and a bottle of shampoo with a sales slip from Brookshire's that showed change returned from a twenty-dollar bill. Sergeant Jimmy Smith, also an investigator for the City of DeRidder, corroborated this testimony. In addition, Lemaire herself admitted buying shampoo at Brookshire's on September 20 and paying for it with a twenty-dollar bill. Finally, on cross-examination, a Secret Service agent testified that Lemaire had told him she had passed a counterfeit twenty-dollar bill at Brookshire's. We hold, therefore, that there is sufficient evidence in the record that Lemaire committed the extrinsic acts to satisfy the preliminary requirements of Rule 404(b) and *Beechum.*

■ Our analysis therefore shifts to *Beechum's* concern that the evidence be relevant to an issue other than defendant's character. 18 U.S.C. § 472 requires proof of intent to defraud in order to establish a violation.[2] This intent, or guilty knowledge, may be inferred from the surrounding circumstances. *United States v. Rice,* 652 F.2d 521, 526 (5th Cir.1981).

In *Rice,* the courts relied upon the use of a large counterfeit bill to make a small purchase, rather than smaller genuine bills in the defendant's possession, as a circumstance from which guilty knowledge could be inferred. In *United States v. Perez,* 698 F.2d 1168 (11th Cir.1983), the court found the most important "surrounding circumstance," indicating the defendant's guilty

---

**2.** 18 U.S.C. § 472 provides:
Whoever, with intent to defraud, passes ... or attempts to pass ... or with like intent keeps in possession or conceal any falsely made, forged, counterfeited or altered obligation or other security of the United States [shall be guilty of an offense against United States].

knowledge, to be the fact that he segregated his counterfeit bills from the genuine bills in his pocket. From this evidence, the court inferred that Perez knew he possessed counterfeit bills. Finally, in *United States v. Slone*, 601 F.2d 800 (5th Cir.1979), the court stated that possession of a substantial amount of counterfeit money might be grounds for inferring knowledge and intent to defraud. All of these circumstances are present here.

▇▇▇ Guilty knowledge may also be inferred from a rapid series of passings of counterfeit bills, *Ruiz v. United States*, 374 F.2d 619 (5th Cir.1967). On this basis, the fact that Lemaire may have passed another counterfeit bill a short time before the incident for which she was charged is highly relevant to the charged offense. Having satisfied the first requirement of *Beechum*, our inquiry can now be focused on the second prong of the *Beechum* test, the balancing of the probity of the evidence against its potential for undue prejudice.

▇▇▇ In assessing the probity of the evidence, the trial judge must consider the overall similarity of the extrinsic and charged offenses. The amount of time separating the extrinsic and charged offenses may also be considered. *Beechum*, 582 F.2d at 915. The similarity of the extrinsic and charged offenses in the instant case is so great as to indicate the execution of one scheme or plan, rather than separate and distinct offenses. This conclusion is supported by the fact that the acts occurred within hours of each other.

▇▇▇ Moreover, there was overwhelming evidence of Lemaire's guilt. Thus, the danger of prejudice was slight. As suggested, a number of counterfeit bills were found in Lemaire's car, several of which had been torn up, possibly indicating an attempt to destroy incriminating evidence. Appellant told McCullough, one of the individuals participating in the search of her car, that she had stolen the car and the money inside it and that a man in Texas had been caught with the counterfeit plates. She said that she had been stupid to get caught with it and that she could not tell the truth about where the money had come from because "they" would kill her in or out of jail. This evidence of Lemaire's guilt was more than adequate for the trial judge to have concluded that there was no undue prejudice.[3]

▇▇▇ Finally, as the government points out, appellant's counsel may have opened the door to this area of extrinsic offense evidence.[4] If, as it appears, the injection of

---

3. This evidence also indicates that any error in admitting the evidence of extrinsic offenses, if made, was harmless. F.R.Crim.P. 52(a); *see United States v. Mortazavi*, 702 F.2d at 528.

4. Appellant took the stand in her own defense. She denied knowing that the currency was counterfeit. She testified that she had found the counterfeit money in a buried container while she was digging some plants at a trailer site. She testified that a man named McGee had recently purchased the trailer where she was digging from a man named Rigsby Courville. She said she knew the Courvilles.

Secret Service Agent Thomas Depiano was called as a defense witness by Lemaire. He testified on direct examination that his agency keeps a history of the various cases involving counterfeit notes. Depiano testified from his history of these cases that he had found ten names of parties arrested or connected with the counterfeit notes of the kind in question here. One of the people identified by Depiano was Rigsby Courville. Depiano was specifically asked by appellant's counsel if Courville was one of the parties and whether he asked the appellant if she knew him or any of the other parties.

Government counsel informed the trial judge out of the hearing of the jury that he intended to use Depiano to rebut the appellant's testimony. He asked the court if he could cross-examine the witness at that time or whether he would have to use him as a rebuttal witness only. The trial judge ruled that appellant's counsel had opened the door by asking for the names of others associated with the counterfeit bill, and that government counsel could question Depiano at that time. Government counsel thereupon developed the following colloquy on cross-examination:

Q "Mr. Depiano, you have just heard the defendant's testimony, have you not?

A Yes, I have.

Q Or [are] portions of her testimony at odds with an interview you had with her on the 21st of September, 1982?

A Yes.

allegedly inadmissible evidence is attributable to the actions of the defense, the doctrine of "invited error" applies. *United States v. Taylor,* 508 F.2d 761, 763–64 (5th Cir.1975). This would remove the matter from being error requiring reversal, unless the error was so patent as to have seriously jeopardized the rights of the appellant. *United States v. Renton,* 700 F.2d 154 (5th Cir.1983). Under the circumstances, there was no error.

Finding the extrinsic offense evidence to have been properly admitted, we see no basis for disturbing the district court's decision.

AFFIRMED.

Q  Did she indicate to you that on that occasion that she had passed a counterfeit twenty bill at Brookshire's?
A  Yes.

\*  \*  \*  \*  \*  \*

Q  Did she indicate how she paid for the items at Brookshire's?
A  With one of the counterfeit twenties."
(Record, Vol. VI, pp. 312–13).