**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Renato GUIDA, Maria Esposito, and Antonio Esposito, Defendants-Appellants.**

**No. 85–3505.**

United States Court of Appeals, Eleventh Circuit.

July 3, 1986.

---

James R. Valerino, Orlando, Fla., for Guida.

Marc L. Lubet, Orlando, Fla., for Maria Esposito.

Alan B. Robinson, Orlando, Fla., for Antonio Esposito.

Bruce Hinshelwood, Asst. U.S. Atty., Orlando, Fla., for U.S.

Before FAY and KRAVITCH, Circuit Judges, and HENLEY *, Senior Circuit Judge.

PER CURIAM:

Appellants Antonio Esposito, Maria Esposito and Renato Guida appeal their convictions for various offenses in connection with the passing of counterfeit $100 Federal Reserve Notes ("counterfeit notes") at Epcot Center, Walt Disney World on February 17, 1985. All three appellants were found guilty of passing counterfeit notes in violation of 18 U.S.C. §§ 2, 472 (1982),[1] and of conspiring to pass, utter, possess and conceal counterfeit notes in violation of 18 U.S.C. § 371 (1982). Antonio Esposito and Renato Guida were also found guilty of possessing counterfeit notes in violation of 18 U.S.C. § 472. Maria Esposito was found not guilty on the possession charge.

The principal arguments on appeal are: (1) that the trial court erred in communicating with the jury outside the presence of appellants and their counsel; (2) that the trial court erred by sending into the jury room an unredacted witness and exhibit list without notifying counsel; and (3) that the

evidence was insufficient to support the convictions.[2] We affirm the convictions on all counts.

## I. FACTS

On January 21, 1985, Antonio Esposito and his wife Maria entered the United States from Italy at John F. Kennedy Airport in New York City. Following a short stay in the New York area, the Espositos rented a car and proceeded to travel from New York to Miami. During the course of their travels, they apparently succeeded in passing counterfeit notes in $100 denominations in places such as Baltimore, Maryland; South of the Border, near Dillon, South Carolina; and Miami, Florida.

On February 13, 1985, in the Miami airport, the Espositos met up with Renato Guida, an acquaintance from their hometown of Naples, Italy. It was allegedly at this time that the Espositos decided to visit the Orlando area. Guida agreed to accompany them on this trip.

On February 17, 1985, the appellants visited Epcot Center, a part of Walt Disney World in Orlando, Florida. While at Epcot, the appellants were detained for their involvement in the passing of counterfeit notes at various stores in Epcot. At the time they were detained, both Maria Esposito and Renato Guida were holding merchandise which had been purchased with counterfeit notes. Furthermore, Antonio Esposito was found to be carrying one counterfeit note and Renato Guida was found to be carrying two counterfeit notes.

---

* Honorable J. Smith Henley, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

1. Counts One through Five of a superseding eight count indictment charged the appellants with passing counterfeit notes. Each count identified an Epcot pavilion where a counterfeit note was passed. The pavilions were identified as follows:

 | Count One | Italian Pavilion |
 | Count Two | German Pavilion |
 | Count Three | Moroccan Pavilion |
 | Count Four | French Pavilion |
 | Count Five | United Kingdom Pavilion |

At the close of the appellants' case, the court granted a judgment of acquittal on Count Two as to all the appellants. The jury thereafter found Antonio Esposito and Renato Guida guilty of Counts One and Three through Five. Maria Esposito was found guilty of Counts Three through Five. The jury found her not guilty of Count One.

2. Appellant Guida also contends that the trial court erred in reserving its ruling on his motion for acquittal following the Government's presentation of their case. We find that this argument is without merit and warrants no discussion.

A subsequent search of their car revealed additional merchandise which had been purchased with counterfeit notes, more than $35,000 in genuine United States currency and more than $48,000 in counterfeit notes.

When asked to give a statement as to how they had obtained the counterfeit notes, the Espositos claimed that they had exchanged Italian lire for United States currency through an unknown and nondescript taxi driver in New York. Guida explained that he had decided to accompany the Espositos to Orlando after having met them, by chance, in the Miami airport. Based on these statements, the identification of the appellants by various Epcot personnel, and the counterfeit notes and the merchandise purchased with counterfeit notes found on the appellants and in their car, the three were arrested.

## II. TRIAL COURT ERROR

The jury retired to deliberate at 12:20 p.m. on May 9, 1985. During the course of their deliberations, they sent a note to the trial judge requesting to see a copy of the witness and exhibit list (the "list") prepared in connection with the case. Without consulting counsel for either side, the trial judge allowed an unredacted copy of that list to be sent into the jury.

■ The Government concedes that the trial court erred in communicating with the jury outside the presence of the appellants and their counsel. "It is certainly true that

preferable procedure would have been for the court to have informed counsel of communications from the jury and to afford them an opportunity to be heard...." *United States v. Bascaro,* 742 F.2d 1335, 1355 (11th Cir.1984), *cert. denied,* ── U.S. ──, 105 S.Ct. 3476, 87 L.Ed.2d 613 (1985). Depending on the particular facts and circumstances of the case, however, an error of this kind may be considered harmless. *United States v. McDuffie,* 542 F.2d 236, 241 (5th Cir.1976).[3] *See Rogers v. United States,* 422 U.S. 35, 40, 95 S.Ct. 2091, 2095, 45 L.Ed.2d 1 (1975). *See also Rushen v. Spain,* 464 U.S. 114, 119, 104 S.Ct. 453, 456, 78 L.Ed.2d 267 (1983) (per curiam) ("that an unrecorded *ex parte* communication between trial judge and juror can never be harmless error ignores [the] day-to-day realities of courtroom life and undermines society's interest in the administration of criminal justice") (footnote omitted).

■ The difficulty in the present case is that the witness and exhibit list was a complete list of all of the exhibits which the Government intended to offer, including exhibits which were not admitted into evidence[4] and exhibits which were not offered by the Government.[5] Consequently, the jury was allowed to consider items not properly in evidence in making their decision.[6] Upon learning of the trial judge's action at approximately 6:00 p.m., all three appellants made motions for mistrial. These motions were denied. On its own initiative, however, the court decided to

---

**3.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc) we adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**4.** The trial judge did not admit certain merchandise from and counterfeit notes passed at different pavilions at Epcot. The judge also excluded pamphlets and brochures from Philadelphia and Washington D.C. because he felt these items would be "confusing" to the jury. A photograph of various perfumes was also not admitted. Finally, a number of counterfeit notes passed in Washington D.C. were not admitted because they were not tied to the appellants in any fashion.

**5.** During the course of the trial, the Government decided not to offer or to withdraw certain items on the witness and exhibit list when it

appeared that there was already sufficient evidence before the jury. The Government therefore withdrew two parking tickets from Washington D.C. Counterfeit notes and a parking ticket from Richmond, Virginia were not offered into evidence because the Government indicated that they intended to "dispense with" that aspect of their case. Finally, various maps and directories were also not offered.

**6.** In a second message sent to the judge, the jury asked to see an item which was described on the witness and exhibit list but which had not been admitted into evidence. Thus it appears that the jury did read and study the list. The judge properly denied this second request.

give the jury a curative instruction. After reading the proposed instruction to counsel, the trial judge asked the marshal to give the instruction to the jury. The marshal returned shortly thereafter and reported that the jury would be out in approximately five minutes. In all probability, therefore, the jury had already reached their verdict when they received the curative instruction. Consequently, in analyzing the potential prejudice to the appellants, we do not rely on the fact that a curative instruction was given.

■ "When jurors consider material not introduced into evidence, the conviction must be reversed unless it is clear that the material was not prejudicial." *United States v. Renteria*, 625 F.2d 1279, 1284 (5th Cir.1980) (citing *Farese v. United States*, 428 F.2d 178, 180 (5th Cir.1970)). Stated in other words, the "defendant is entitled to a new trial unless there is no reasonable possibility that the jury's verdict was influenced by the material that improperly came before it." *Llewellyn v. Stynchcombe*, 609 F.2d 194, 195 (5th Cir. 1980). When making such an inquiry, several factors should be considered "including the content of the alleged extrinsic materials, the manner in which the extrinsic materials were brought to the judge's attention, and the weight of the other evidence against the accused." *Id.*

■ Appellants contend that the witness and exhibit list contained a number of objectionable items which had not been admitted into evidence. First, appellants point out that the list referred to some twenty-one counterfeit notes which were not in

evidence.[7] From this, they argue, the jury was able to infer that the appellants passed or were suspected of passing at least twenty-one additional counterfeit notes. In so arguing, however, appellants ignore the fact that more than 500 counterfeit notes were admitted into evidence during the course of the trial. We therefore find that the additional notes contained on the list were not prejudicial in view of the overwhelming number of notes that had already been admitted.

■ Second, the appellants contend that the various items of merchandise from the Epcot pavilions which were not admitted into evidence but appeared on the witness and exhibit list were prejudicial. Specifically, the appellants object to the following items:

| Exhibit Number | Identified As |
| --- | --- |
| 18 | Toys |
| 27 | Earrings |
| 28 | Receipt |
| 29 | Gown |
| 30 | Receipt |
| 31 | Elephant and Turtle |
| 32 | Scarves |
| 34 | Ceramic Monk |
| 36 | Key Rings |
| 37 | Receipt |

With respect to Exhibits 27, 29 and 34,[8] we find that the appellants have no cause to complain of prejudice because, during the course of the trial, there was testimony specifically describing these items. For example, Exhibits 27 and 29 were described by Special Agent Julia Pierson in her testimony regarding the packages found in the appellants' car.[9] Exhibit 34 was described by Agent Pierson as an item in appellant

---

7. The notes not in evidence which were contained on the list included notes which had been passed in Washington D.C. and Richmond, Virginia in addition to three counterfeit notes from pavilions at Epcot. It is important to note, however, that these counterfeit notes were not identified as having been passed in any particular city. Therefore, the jury could only speculate as to the source of these notes.

8. In her testimony, Joanna Sailor, an investigator at Walt Disney World, referred to Exhibits

31 and 32 by number and identified them as items from the Mexican Pavilion. She did not, however, describe these items.

9. Agent Pierson testified:
[I]n the packages in the car I found some items that appeared to have come from EPCOT's China Pavilion, more specifically a pink silk type gown with a sales receipt from the store in the China Pavilion, [and] ... two little golden duck earrings and a sales receipt from the China Pavilion.

Guida's possession.[10] We therefore conclude that these items were not prejudicial because even though they were not properly in evidence, it is clear that the jury was aware of their existence and of their connection to the appellants. *Cf. United States v. Hensel,* 711 F.2d 1000 (11th Cir. 1983).[11]

We similarly find no prejudice with respect to the other merchandise not admitted into evidence. Much of the evidence adduced at trial consisted of various salespersons who testified to purchases made with $100 bills. In describing these transactions, numerous references were made to the items purchased with the counterfeit notes. Moreover, in her testimony, Agent Pierson described, in great detail, the merchandise found in the appellants' possession and in their car. Finally, many items of merchandise were properly admitted into evidence. We therefore find that Exhibits 18, 31, 32, and 36 were not prejudicial to the appellants in light of the substantial evidence and testimony concerning other merchandise which was presented at trial.

■ Third, appellants object to Exhibit 170, a photograph of various perfumes. However, given the fact that Agent Pierson made explicit reference in her testimony to a number of perfumes found in the appellants' car, we find that the photograph was not prejudicial in that it added nothing to the evidence which had already been presented to the jury.

■ Finally, appellants object to the pamphlets, maps, receipts and tickets from different cities along the east coast.[12] In his testimony, however, Antonio Esposito admitted driving from New York to Miami with his wife. Thus, these items are merely corroborative of the fact that the Espositos travelled down the east coast. We therefore conclude that these items were not prejudicial because they added nothing to the Government's case.

This case is clearly distinguishable from cases where the extrinsic evidence which comes before the jury constitutes a significant addition to the evidence already presented at trial. For example, in *United States v. Howard,* 506 F.2d 865, 866 (5th Cir.1975), one of the jurors told the other jurors "that Howard had been in trouble before." Relying on the fact that no such evidence was presented at trial, the court remanded the case to the trial court to determine whether the extrinsic evidence was prejudicial to Howard. *Id.* Similarly, in *Farese v. United States,* 428 F.2d 178 (5th Cir.1970), the court reversed the appellant's conviction because the jury, to the surprise of the court, the Government and defense counsel, discovered $750.00 in cash during their examination of the appellant's shirt which was inside an attache case which had been introduced into evidence. In so doing, the Fifth Circuit stated "[i]t cannot be said that there was no reasonable possibility that the discovery of $750.00 in cash affected the jury's verdict." *Id.* at 181. In contrast with these cases, the extrinsic evidence which came before the jury in our case consisted of information which had already been conveyed to the jury during the trial.

The facts we are presented with are similar to the situation in *Llewellyn v. Stynchcombe,* 609 F.2d 194, 196 (5th Cir.1980), where the extrinsic evidence was found to

---

**10.** Agent Pierson testified that Guida was "carrying a—there are two monks holding a sundial in an EPCOT shopping bag. It says Goebbel on the bottom." Exhibit 34 was also described by Joanna Sailor.

**11.** In *United States v. Hensel,* 711 F.2d 1000 (11th Cir.1983), the appellants were convicted of setting fire to their vessel, the "PATSY ANN." On appeal, the appellants claimed that the jury's verdict was improperly influenced by a photograph showing a red jerry can among the fire damage on the "PATSY ANN" which was exclud-

ed from evidence but got into the jury room. In finding that the error was harmless, the court noted: (1) the can itself was in evidence; (2) the jury knew that the can had been found on the vessel; and (3) the evidence of appellants' guilt was overwhelming. *Id.* at 1005.

**12.** Appellant Guida is least able to argue that these items were prejudicial. The Government made no attempt to tie him to any matters which took place along the east coast prior to his arrival in Miami on February 13, 1985.

be "simply cumulative, adding nothing to the evidence properly introduced at trial." *See also Martin v. Estelle*, 541 F.2d 1147, 1148 (5th Cir.1976). In *Llewellyn*, a copy of the witness list was discovered in the jury room. On appeal, Llewellyn argued that the witness list, which identified the offense as "Murder, Arson," was prejudicial.[13] The court disagreed, finding that in light of the references to arson and fire made during the trial, the reference to "Arson" on the witness list was merely cumulative. *Id.* at 196.

■ In sum, we conclude that the error in this case is harmless. As outlined above, we are faced with a situation where the evidence that was improperly before the jury was cumulative and concerned matters already before them. Therefore, the "extrinsic material did not pose a 'reasonable possibility of prejudice' to the jury's verdict." *Id.* (quoting *Estes v. United States*, 335 F.2d 609, 618 (5th Cir.1964), *cert. denied*, 379 U.S. 964, 85 S.Ct. 656, 13 L.Ed.2d 559 (1965)).

## III. SUFFICIENCY OF THE EVIDENCE

The appellants also argue that the evidence presented at trial was insufficient to support their convictions.[14] In reviewing the evidence presented, we "must view all of the evidence, together with all logical inferences flowing from that evidence, in the light most favorable to the government, and must draw all credibility choices in favor of the finder of fact." *United States v. Perez*, 698 F.2d 1168, 1169 (11th Cir.1983) (citing *United States v. Gianni*, 678 F.2d 956, 958–59 (11th Cir.), *cert. denied*, 459 U.S. 1071, 103 S.Ct. 491, 74

L.Ed.2d 633 (1982)). The standard of review for sufficiency of the evidence is whether "a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc) (footnote omitted), *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).[15] The standard of review does not change when the Government relies on circumstantial, rather than direct, evidence to establish its case. *See id.* n. 3.

### 1. Passing Counterfeit Notes

The evidence presented at trial included the testimony of various salespersons at Epcot who described the transactions involving the counterfeit notes. Four Epcot salespersons identified Antonio Esposito as the person who passed a $100 bill that was later discovered to be counterfeit. Another salesperson identified Antonio Esposito as passing a $100 bill, but could not tie him to the counterfeit note because the salesperson had received three $100 bills from customers that day. There was also testimony that Maria Esposito accompanied her husband on most of these passes. In one shop in which she was not identified, a woman matching Maria Esposito's description was shown to have accompanied Antonio Esposito. Although Renato Guida was not identified as accompanying the Espositos into the various stores, there was testimony that appellant Guida would meet the Espositos as they exited a store and that they would again separate as they approached another pavilion. Moreover, when Guida was initially detained at Epcot he was with the Espositos and carrying merchandise

**13.** Llewellyn also alleged that the written jury charges on conspiracy and corroborating circumstances and a proposed charge regarding the defendant's failure to testify which were also found in the jury room were prejudicial. *Llewellyn v. Stynchcombe*, 609 F.2d 194, 195 (5th Cir.1980). The court held that the instructions on conspiracy and corroborating circumstances were not prejudicial because the identical charge had already been read in open court. *Id.* The charge on failure to testify was proposed by Llewellyn's attorney and was therefore also found to be not prejudicial. *Id.*

**14.** Although Antonio Esposito did not specifically raise this argument on appeal, he has adopted the points raised on appeal in his co-appellants' briefs. Presumably, this includes a challenge to the sufficiency of the evidence supporting his convictions.

**15.** In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982) we adopted as precedent decisions of the former Fifth Circuit, Unit B, rendered after September 30, 1981.

which had been purchased with counterfeit notes.

Agent Pierson testified as to the modus operandi of a counterfeit passing ring. She explained that passers tend to purchase low priced items with large bills in order to obtain the maximum amount of genuine currency in exchange; that they tend to fold their change in half and to segregate the counterfeit notes from the genuine currency; and that they tend to discard receipts and to put purchases in a vehicle rather than carry them. Additionally, Agent Pierson attempted to place the activities of the appellants in proper perspective by explaining the different roles in a counterfeit passing scheme. Thus, she testified that one person carries the currency and the purchases while the person passing the counterfeit notes tries to carry as little as possible so as to avoid creating any distraction.

The other inculpatory evidence presented during the trial included the fact that at the time the appellants were detained, Renato Guida and Maria Esposito were carrying merchandise that had been purchased with counterfeit currency and the fact that Renato Guida and Antonio Esposito had counterfeit notes in their possession. Moreover, the testimony at trial revealed that a subsequent search of the appellants' car resulted in the discovery of a large amount of genuine and counterfeit currency and merchandise purchased with counterfeit currency. There was also testimony that the appellants initially denied knowing each other when they were brought to the Epcot security office. Finally, a document analyst testified that the counterfeit notes were printed on genuine Federal Reserve Notes which had been bleached and then reprinted in a higher denomination. One-hundred and fifty new one dollar bills were found among Antonio Esposito's belongings.

■ To establish a violation of 18 U.S.C. § 472 (1982),[16] "the Government must not only show that the accused passed or possessed counterfeit money, but also that he did so with intent to defraud." *United States v. Ritz,* 548 F.2d 510, 521 (5th Cir. 1977). To prove the statutory requirement of intent, it is necessary to show that the accused knew that the notes were counterfeit. *United States v. Slone,* 601 F.2d 800, 803 (5th Cir.1979). This "guilty knowledge" may be inferred from circumstantial evidence, however, and "[s]urrounding circumstances may supply inferences of knowledge which adequately prove intent." *Id.* Thus it has been held that guilty knowledge may be inferred from the rapid and repetitious passing of counterfeit notes, *Ruiz v. United States,* 374 F.2d 619, 620 (5th Cir.1967); the repeated use of large counterfeit notes in lieu of change received from prior purchases, *id.;* furtive conduct by the accused, *Ritz,* 548 F.2d at 521; and the segregation of counterfeit notes from genuine currency, *Perez,* 698 F.2d at 1171.

■ A review of the evidence presented against Antonio Esposito shows that there was ample basis for the jury's verdict. The evidence at trial revealed that Antonio Esposito was clearly identified by various salespersons as the individual who passed the counterfeit notes in question. Moreover, he consistently purchased low priced merchandise with $100 bills. Furthermore, his luggage contained large sums of counterfeit and genuine currency and he was in possession of one counterfeit note which was found in a side pocket of his wallet when he was detained at Epcot. Finally, although Antonio Esposito testified that he did not know the notes were counterfeit and that the source of the counterfeit currency was an unknown taxi driver in New York City, the jury was free to disbelieve

---

**16.** 18 U.S.C. § 472 (1982) provides:

**§ 472. Uttering counterfeit obligations or securities**

 Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both.

this story. *See United States v. Hewitt*, 663 F.2d 1381, 1385 (11th Cir.1981).

■ None of the witnesses who testified at trial identified Maria Esposito or Renato Guida as passing counterfeit notes. Thus it is clear that the theory as to these two was that they aided and abetted Antonio Esposito in passing counterfeit currency in violation of 18 U.S.C. § 2 (1982).[17] "[T]o sustain a conviction for aiding and abetting, the evidence must show that [the] defendant was associated with the criminal venture, participated in it as in something he wished to bring about, and sought by his action to make it succeed." *United States v. Martinez*, 555 F.2d 1269, 1272 (5th Cir.1977). Stated another way, it must be shown that the accused shared the requisite criminal intent of the principal and committed an overt act in furtherance of the criminal venture. *See Hewitt*, 663 F.2d at 1385.

■ The evidence regarding Guida showed that he would meet the Espositos as they exited a store and that the three would again separate as they approached another pavilion. Although it is well established that "[m]ere association with a criminal, standing alone, is not enough to convict," *Martinez*, 555 F.2d at 1271, the evidence here suggests more than mere association. First, when Guida was initially detained, he was holding merchandise that had been purchased with counterfeit notes. He was also in possession of two folded counterfeit notes. Moreover, he was in possession of eleven "packets" of genuine currency, some of which appeared to be the change from various purchases made with the counterfeit notes.[18] Based on this evidence, a reasonable jury could have found

that Guida's role in the scheme was to help Antonio Esposito avoid detection by carrying the merchandise and currency while Esposito passed the counterfeit notes. Such a finding would be consistent with Agent Pierson's testimony outlining the modus operandi of a counterfeit passing ring. *See supra* p. 1095.

■ Maria Esposito argues that the only evidence against her was that she was present when her husband passed the counterfeit notes and that mere presence at the scene of the crime is not sufficient for a conviction. Although we agree that presence alone is not sufficient to sustain a conviction, "a jury need not ignore the fact of presence, and presence coupled with other evidence of guilt can be an adequate basis for the jury to convict." *United States v. Schwartz*, 666 F.2d 461, 463–64 (11th Cir.1982). At the time she was detained at Epcot, Maria Esposito was holding items which had been purchased with the counterfeit notes. From this fact, the jury could have inferred that Maria Esposito's role in the counterfeit passing scheme was similar to Guida's. Furthermore, she was shown to have lied to Said Leghlid, a salesperson at Epcot, by telling him she was French. Arguably this was an attempt to hide her identity and that of her husband while they were passing counterfeit notes. "It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt...." *Bell*, 678 F.2d at 549. Thus, "[a] jury is free to choose among reasonable constructions of the evidence." *Id.* Viewing the totality of the evidence presented, we conclude that a reasonable jury could have found that Maria Esposito

17. 18 U.S.C. § 2 (1982) provides:

 § 2. **Principals**

 (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

 (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

18. Two packets of genuine currency were found in appellant Guida's right front pants pocket. One packet totalled $85, the other, $48. Six packets of genuine currency were found in his left front pants pocket in the following denominations: $95, $89, $80, $90, $80 and $91. The two counterfeit notes were also found in this pocket. Three additional packets of genuine currency were found in appellant Guida's right sock. The first packet totalled $89, the second, $85 and the third, $790.

was associated with the scheme, participated in it and sought by her actions to make it succeed. *See Schwartz*, 666 F.2d at 464 (citing *Martinez*, 555 F.2d at 1272).

### 2. *Possession of Counterfeit Notes*

Renato Guida and Antonio Esposito were found guilty of possessing counterfeit currency in violation of 18 U.S.C. § 472.[19] As we stated above, to prove a violation of section 472, it must be shown that the accused passed or possessed counterfeit currency and did so with intent to defraud. *United States v. Gonzalez*, 617 F.2d 104, 106 (5th Cir.), *cert. denied*, 449 U.S. 868, 101 S.Ct. 202, 66 L.Ed.2d 86 (1980). *See supra* p. 1095.

We have already concluded that the evidence shows that Renato Guida and Antonio Esposito had the requisite guilty knowledge needed to sustain their convictions. Moreover, we note that *United States v. Perez*, 698 F.2d 1168 (11th Cir.1983), provides additional support for our conclusion. In *Perez*, the appellant challenged the sufficiency of the evidence supporting his conviction for possession of counterfeit currency. The evidence showed that three counterfeit bills were found in the appellant's pocket along with $79 in genuine currency. We noted that "[a]lthough the counterfeit bills and the genuine bills were kept in the same pocket, the counterfeit bills were segregated from the genuine bills rather than being folded together in a single packet." *Id.* at 1170. In upholding the appellant's conviction we stated that this segregation of counterfeit currency from genuine bills was the "most important 'surrounding circumstance' indicative of appellant's guilty knowledge." *Id.* at 1171.

▮ Similarly, in the present case, we find that the appellants' attempts to segregate the genuine currency from the counterfeit currency in their possession was indicative of their guilty knowledge. The two counterfeit notes in appellant Guida's possession were folded, and found in his pants pocket. Although six "packets" of genuine currency were found in the same pocket, these packets of currency were also folded and thus segregated from the counterfeit currency. The counterfeit note in Antonio Esposito's possession was found in a side pocket of his wallet, apart from the genuine currency. Additionally, a large amount of genuine and counterfeit currency was found in Antonio Esposito's luggage. Eight packets of genuine currency totalling $12,500 and a package of thirty-six counterfeit $100 bills with a rubber band wrapped around it were found underneath a "false panel" at the bottom of one of his suitcases. A second suitcase contained $20,500 in genuine currency and 451 counterfeit $100 notes. The genuine currency was found underneath a false panel at the bottom of the suitcase. The counterfeit currency was found in a pair of men's boots which were found inside a green cloth bag in the suitcase.

As in *Perez*, we find that the segregation of the real currency from the counterfeit was strong evidence of the appellants' knowledge that they were in possession of counterfeit notes. *See id.* Viewing the evidence as a whole, a reasonable jury could have found the appellants guilty of possession of counterfeit currency.

### 3. *Conspiracy*

▮ The essence of a conspiracy is the existence of an agreement by two or more persons to engage in criminal activity. *United States v. Grassi*, 616 F.2d 1295, 1301 (5th Cir.), *cert. denied*, 449 U.S. 956, 101 S.Ct. 363, 66 L.Ed.2d 220 (1980); *United States v. Carlton*, 475 F.2d 104, 106 (5th Cir.), *cert. denied*, 414 U.S. 842, 94 S.Ct. 100, 38 L.Ed.2d 80 (1973). *See also* 18 U.S.C. § 371 (1982).[20] The Government

---

**19.** Count Six of the indictment charged Renato Guida with possession of two counterfeit notes in violation of 18 U.S.C. § 472 (1982). Count Seven of the indictment charged the Espositos with possession of 449 counterfeit notes in violation of 18 U.S.C. §§ 472, 2 (1982).

**20.** 18 U.S.C. § 371 (1982) provides in pertinent part:

§ 371. **Conspiracy to commit offense or to defraud United States**

If two or more persons conspire either to commit any offense against the United States,

has the burden of proving that the accused "knew of the agreement, and with that knowledge voluntarily participated in the agreement." *United States v. Heller*, 625 F.2d 594, 598 (5th Cir.1980). "Since secrecy and concealment are the hallmarks of a conspiracy, the element of agreement is seldom susceptible of direct proof." *United States v. Evans*, 572 F.2d 455, 468 (5th Cir.), *cert. denied*, 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978). Therefore, "evidence of knowledge and association may be combined with other circumstantial evidence to prove an agreement to join a conspiracy." *Grassi*, 616 F.2d at 1301–02. *See also Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942) (participation in a conspiracy may be inferred from circumstantial evidence).

 We find that the evidence presented at trial established the existence of an agreement among the three appellants to pass counterfeit currency at Epcot. Moreover, as outlined above, it is clear from the appellants' actions that they each played a role in furtherance of that agreement. We also find that by denying knowing each other when initially detained at Epcot, the appellants further evidenced their commitment to the conspiracy. It is not necessary to show that the person charged with the conspiracy participated in every aspect of the criminal venture. *Heller*, 625 F.2d at 598. Rather, it is enough that the accused knew of the agreement and voluntarily participated therein. *Id.* Thus, we find that the evidence as a whole is sufficient to sustain the appellants' conspiracy convictions.

## CONCLUSION

For the foregoing reasons, we conclude that the appellants' convictions should be affirmed in all respects.

AFFIRMED.

or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act

to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.