**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Winfield TUCKER, Defendant-Appellant.**

**No. 85–2986.**

United States Court of Appeals,
Seventh Circuit.

Argued April 24, 1987.

Decided May 26, 1987.

Thomas G. DiCianni, Chicago, Ill., for defendant-appellant.

Ruben Castillo, U.S. Atty., Anton R. Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before BAUER, Chief Judge, CUDAHY and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

The defendant, Winfield Tucker, was indicted for passing a counterfeit $100 bill, attempting to pass a counterfeit $50 bill, and possessing a counterfeit $50 bill, all in violation of 18 U.S.C. § 472. A jury found the defendant guilty on all three counts. On appeal, the defendant argues that the evidence was insufficient for the jury to find him guilty. He also argues that, due to alleged prosecutorial misconduct, he was denied a fair trial. We conclude that the evidence was sufficient to convict Tucker, and that although one of the prosecutor's statements was improper, the statement did not deny him a fair trial. We therefore affirm his conviction.

### I.

On April 30, 1985, the defendant entered Cincy's Unit No. 5, which is a tavern and liquor store. The defendant bought a bottle of cognac and a pack of cigarettes, which cost approximately seven dollars. The defendant paid for these items with a counterfeit $100 bill.

The defendant next went across the street to the Cosmopolitan Drug Company. Cosmopolitan sells prescriptions and over-the-counter drugs, food, and sundries. The store manager, Ann Schaefer, waited on the defendant. Schaefer immediately became suspicious of the defendant because of the "outrageous" manner in which he was dressed.[1] Schaefer gathered the items he requested, which amounted to approximately four dollars worth of sundries. The defendant attempted to pay with a counterfeit $50 bill. Schaefer, suspicious that such a large bill was used for a small purchase, scrutinized it. She then checked a "lookout sheet" prepared by the Secret Service. The sheet contained the serial numbers of counterfeit $50 and $100 bills circulating in the area. Schaefer found that the serial numbers matched, and called the Chicago Police.

The defendant was arrested. The search incident to arrest revealed another counterfeit $50 bill in one pocket, and in the other pocket, four $20 bills, one $10 bill, and three $1 bills, all of which were genuine. The defendant was indicted for: passing a counterfeit $100 bill (at Cincy's); attempting to pass a counterfeit $50 bill (at Cosmopolitan Drug); and possession of a counterfeit $50 bill. The defendant was found guilty and sentenced to five years imprisonment on one count, and to concurrent terms of five years probation on the other counts, to run consecutively with the prison term. Tucker filed a timely notice of appeal.

### II.

Tucker's first argument is that the evidence presented at trial was insufficient to prove that he intentionally possessed and passed counterfeit money. We conclude

---

1. Ms. Schaefer described the defendant's clothes at trial:

    The outfit he was wearing definitely caught my eye because it was kind of—well, it was a little bit outdated, but it was a little outrageous, also. He was wearing a rust-colored silk shirt and a brown leather jacket over that.

    He had on peach-colored flared bell bottoms of a type that have been out of style for several years, and then he was wearing leopard-skin boots, and as he walked through the store, I kind of noticed this outfit. It really kind of caught my eye.
    Tr. 471.

that the evidence was sufficient, and reject this claim.

> Our standard of review requires that: [T]he evidence be viewed in the light most favorable to the government in determining whether "any rational trier-of-fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Roman,* 728 F.2d 846, 857 (7th Cir.), *cert. denied,* 466 U.S. 977, 104 S.Ct. 2360, 80 L.Ed.2d 832 (1984). In reviewing sufficiency of the evidence at this distance from the trial we must give deference to the jury's weighing of the evidence and its drawing of reasonable inferences. *United States v. Pritchard,* 745 F.2d 1112, 1122 (7th Cir.1984); *United States v. Niemiec,* 611 F.2d 1207 (7th Cir.1980).

*United States v. Locksley,* 811 F.2d 1104, 1107 (7th Cir.1987) (*quoting United States v. Draiman,* 784 F.2d 248 (7th Cir.1986)); *see also United States v. Lundy,* 809 F.2d 392, 396 (7th Cir.1987) ("Only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt, may an appellate court overturn the verdict." (citations omitted)).

■ The defendant was charged with violating 18 U.S.C. § 472.[2] To establish a violation of § 472, the government must prove that the defendant, with the intent to defraud, passed or possessed counterfeit money. *United States v. Guida,* 792 F.2d 1087, 1095 (11th Cir.1986) (*quoting United States v. Ritz,* 548 F.2d 510, 521 (5th Cir. 1977)). "To prove the statutory requirement of intent, it is necessary to show that the accused knew that the notes were counterfeit." *Id.* (*citing United States v. Slone,* 601 F.2d 800, 803 (5th Cir.1979)). The requisite fraudulent intent may be inferred from the surrounding circumstances. *Guida,* 792 F.2d at 1095; *United States v. Lemaire,* 712 F.2d 944, 947 (5th Cir.), *cert. denied,* 464 U.S. 1012, 104 S.Ct. 535, 78 L.Ed.2d 716 (1983); *United States v. Perez,* 698 F.2d 1168, 1170–71 (11th Cir. 1983) (listing various circumstances that may permit an inference of intent); *United States v. Rice,* 652 F.2d 521, 529–31 (5th Cir.1981); *cf. United States v. Mascio,* 774 F.2d 219, 221 (7th Cir.1985) ("It is well settled that '[c]ircumstantial evidence may be used to prove a defendant's intent; indeed, that usually is the only evidence available to show intent.'" (*quoting United States v. Starnes,* 644 F.2d 673, 676 (7th Cir.), *cert. denied,* 454 U.S. 826, 102 S.Ct. 116, 70 L.Ed.2d 181 (1981)).

■ The requisite fraudulent intent may be inferred from the "rapid and repetitious passing of counterfeit notes." *Guida,* 792 F.2d at 1095 (*citing Ruiz v. United States,* 374 F.2d 619, 620 (5th Cir.1967)). A defendant's intent may also be inferred from the use of large counterfeit bills to make small purchases, rather than the use of small genuine bills in his or her possession. *See Rice,* 652 F.2d at 531–32. Moreover, intent may be inferred from the segregation of genuine from counterfeit money. *See Perez,* 698 F.2d at 1170–71.

■ The evidence shows that all these circumstances are present here. The defendant passed two counterfeit bills within a very short time period. After passing one bill, he immediately crossed the street to pass another. He used large counterfeit bills for both purchases, even though the amounts involved were relatively small. At the time of the second purchase, the defendant had small genuine bills in his possession; but he used a large counterfeit bill instead. *See Rice* at 532. Also, when the police arrested the defendant, he had a counterfeit bill in one pocket and genuine bills in another.

We conclude that this evidence is sufficient for a rational jury to find the requi-

---

2. The statute provides:
   Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both.
   18 U.S.C. § 472 (1982).

site intent necessary to conclude that the defendant was guilty beyond a reasonable doubt of violating 18 U.S.C. § 472.

### III.

The defendant argues that three statements by the prosecutor in closing argument amounted to prosecutorial misconduct. He asserts that these improper arguments "cumulatively" operated to deny him a fair trial, so that his conviction must be reversed. Although we conclude that one of the statements was improper, it did not operate to deny the defendant a fair trial.

We have stated that:

In closing argument, the prosecutor may make any comments supported by the evidence or in reply to any argument raised by his opponent.... Moreover, the closing argument must be viewed as a whole to determine whether any improper statements were unfairly prejudicial.... In order to constitute reversible error, these statements must be calculated to unfairly prejudice the defendant or suffice to alter the outcome of the trial.

*United States v. Brantley,* 786 F.2d 1322, 1330 (7th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 3284, 91 L.Ed.2d 572 (1986) (*citing United States v. Brack,* 747 F.2d 1142, 1152 (7th Cir.1984), *cert. denied,* 469 U.S. 1216, 105 S.Ct. 1193, 84 L.Ed.2d 339 (1985) (citations omitted)); *see also Shepard v. Lane,* 818 F.2d 615, 621 (7th Cir.1987) ("In evaluating a claim of prosecutorial misconduct as a violation of the [defendant's] due process right to a fair trial, the inquiry is whether the prosecutor's closing argument statements 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" (*quoting Darden v. Wainwright,* — U.S. —, 106 S.Ct. 2464, 2472 (1986)). Thus, we must determine whether the prosecutor's statements were improper, and if so, whether they denied the defendant a fair trial. *See Shepard* at 622.

The first statement Tucker complains of is the prosecutor's statement that, "a Grand Jury indicted Winfield Tucker on three counts." The defense objected to this statement, and the objection was sustained. The defendant asserts that the jury must have assumed the reference to the grand jury meant that an earlier jury had already found the defendant guilty.

■ We conclude that this statement was improper, and that the prosecutor was careless in this reference. There was no reason in this case for the prosecutor to refer to the fact that a grand jury had issued the indictment. We believe that such a reference might have misled the jury. The prosecutor argues, however, that his reference to the grand jury was not error because other references were made to the indictment. We do not agree. The other references to the indictment were by the judge, who properly instructed the panel at *voir dire,* and in his instructions to the jury, that the mere fact that the defendant was indicted, does not mean he is guilty. Furthermore, the prosecutor misses the point: any prejudicial aspect of his statement arose from his use of the phrase "grand jury" and not his reference to the indictment.

We conclude that the prosecutor's statement was harmless error. The judge's cautionary remarks alleviated any prejudice caused by the improper reference. Therefore, despite the impropriety of this remark, we do not believe that it had a substantial effect on the jury which denied the defendant a fair trial.

Tucker next asserts that the prosecutor's statement that Tucker had segregated the genuine bills from the counterfeit bills was an improper inference. Because the defense failed to object to this statement, we analyze this objection under the plain error standard. *See Brantley,* 786 F.2d at 1327–28.

The general rule in this circuit is that counsel "may in argument suggest *reasonable* inferences from the evidence previously admitted." *United States v. Carter,* 720 F.2d 941, 950 (7th Cir.1983) (emphasis added) (*citing United States v. McPartlin,* 595 F.2d 1321, 1360 (7th Cir.), *cert. denied,* 444 U.S. 883, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979)); *see also United States v. Doyle,*

238

771 F.2d 250, 258 (7th Cir.1985). The "[i]nferences, however, must be 'fair comment on the evidence,' and not 'akin to the presentation of wholly new evidence.'" *Doyle,* 771 F.2d at 258 (*quoting United States v. Vargas,* 583 F.2d 380, 385 (7th Cir.1978)).

■ We believe that the prosecutor's inference was reasonable and was a fair comment on the evidence. The evidence was that upon arrest, Tucker had the genuine bills he received at Cincy's in one pocket, and a counterfeit $50 bill in his other pocket. Although there was no evidence that Tucker kept the counterfeit $50 bill he attempted to pass at Cosmopolitan Drugs in the same pocket as the counterfeit $50 bill found in his possession on arrest, we believe that the prosecutor's statement was a fair inference from the evidence.

■ The defendant also challenges the prosecutor's statement in closing argument that Tucker went to a transient neighborhood, rather than an area where he lived and was known, so that he would not be recognized. The defendant failed to object to this statement at trial, so we must again determine whether it amounted to plain error.

The government argues that this remark was proper because the sales clerks at the stores where the defendant made the purchases did not recognize him. Furthermore, one of the clerks testified that the area was a transient one. The prosecutor's remark that the neighborhood was transient was supported by the record. A fair inference from that evidence is that an individual would go there because he or she would not be recognized. We believe that this is a reasonable inference and does not amount to prosecutorial misconduct.

### IV.

We conclude that the evidence was sufficient to convict the defendant. Although one remark by the prosecutor was improper, it did not deny the defendant a fair trial.

AFFIRMED.