[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 9, 2007
THOMAS K. KAHN
CLERK

No. 07-10833
Non-Argument Calendar

_____

D. C. Docket No. 06-60155-CR-WPD

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FERDINAND EDOUARD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(November 9, 2007)**

Before BIRCH, DUBINA and KRAVITCH, Circuit Judges.

PER CURIAM:

Ferdinand Edouard ("Edouard") appeals his conviction and 18-month

sentence for possessing, passing, and uttering counterfeit currency in violation of 18 U.S.C. § 472. For the reasons discussed below, we affirm.

## I. Background

At trial, Alimudden Ishmael testified that he is the owner of a gas station and convenience store in Florida. On May 23, 2006, Edouard drove to the store on a bicycle and had a large box with him. He left the bike outside the store, leaving the box, and attempted to purchase an iced tea costing $1.05 with a $50 bill. When Ishmael marked the bill to detect if it was genuine currency, he discovered that it was not. He then told Edouard that he could not accept the note but Edouard insisted that Ishmael provide change. Ishmael then left Edouard with another employee and called the police.

When the police arrived, Officer Hernandez examined the $50 bill and the box. He asked Edouard where he got the note and Edouard told him that he found it at the "corner of southwest 11th Street and 441." Hernandez asked Edouard if he found any more money and Edouard showed him his wallet. Inside the wallet was a "bunch of bills," separated into two separate compartments. Inside one compartment was $4,113 in counterfeit bills (in a mixture of $1, $20, $50, and $100 notes) and, inside the other, there was $31 in genuine currency.

Police Officer Berryman also asked Edouard where he got the money; he

told Berryman that he found it "around the street in North Lauderdale on State Road 7 on the corner."

The box that Edouard had with him at the store was taped up, but was previously opened, and contained a Hewlett Packard printer. Secret Service Agent Pagano testified at trial that the ink in the printer was consistent with the ink on the bills, though she could not say for sure whether the printer was used to print the bills. When asked whether a certain degree of skill was required to make the printer produce counterfeit money, she testified that all that was needed was the printer and "a finger to push a button."

Secret Service Special Agent Bruno testified that Edouard indicated that he found the money in a bag on Oakland Park Boulevard and that he was attempting to exchange the large denomination bills for smaller denomination bills by purchasing small items with large bills and receiving the change. Bruno noticed that one of the genuine $1 bills was marked by an ink pen and eight counterfeit bills bore the same ink mark.

When Edouard testified, he stated that he found the money in a plastic bag in the area of "55th or 56th" on Oakland Park Boulevard but that he did not remember what time of day he found it. He also claimed that he purchased the printer for the purpose of sending it to family in his native Haiti but that the machine was

3

malfunctioning; as a result, he was on his way to return it when he was arrested.

Edouard moved for acquittal on the basis of insufficient evidence both at the close of the prosecution's case and at the close of his own case. The judge denied the motion on both occasions.

During the prosecutor's closing statement, Edouard stood up and declared that he wanted to talk to the jury "and explain to them what really happened." The judge then excused the jury from the room and a conversation ensued in which Edouard stated that he would like to represent himself pro se. The judge denied the motion as untimely and because the judge thought that Edouard would only hurt his case. The jury then convicted Edouard.

Following the conviction, the judge ordered a Pre-sentence Investigation Report ("PSIR"). The PSIR found a base offense level of 9, a special offense characteristic increase of one level in accordance with U.S.S.G. § 2B5.1(b)(1)(A) because the face value of the counterfeit money exceeded $2,000 but did not exceed $5,000, and a two-level increase in accordance with U.S.S.G. § 3C1.1 for obstruction of justice. Thus, the final adjusted offense level was 12. Edouard's criminal history category was II.

The probation officer determined the obstruction of justice was proper because Edouard failed to appear for a judicial proceeding while out on bond and

4

failed to supply his Pretrial Services Officer with a legitimate address. Edouard objected to the PSIR's obstruction of justice enhancement on the ground that those facts were not submitted to the jury and proved beyond a reasonable doubt and that, because of this, the enhancement violated <u>Booker</u>.[1] Edouard did not dispute that he failed to appear or that he provided a false address to the Pretrial Services Officer. The PSIR concluded that the applicable guidelines range was 12-18 months.

At sentencing, the district judge overruled Edouard's objection to the obstruction of justice enhancement and sentenced him to 18 months imprisonment.

On appeal, Edouard argues that (1) the evidence was insufficient to support his conviction, (2) the district court erred by refusing to permit him to represent himself pro se, and that (3) the district court erred in enhancing his sentence based upon facts that were not submitted to the jury or proved beyond a reasonable doubt in violation of <u>Booker</u>.

## II. Standard of Review

An insufficiency of the evidence claim is reviewed de novo. <u>United States v. Diaz</u>, 248 F.3d 1065, 1084 (11th Cir. 2001). We review the denial of a defendant's request to proceed pro se under the abuse of discretion standard if the

---

[1] <u>U.S. v. Booker</u>, 543 U.S. 220 (2005).

request was made after the trial began.  See United States v. Teague, 953 F.2d 1525, 1539-40 (11th Cir. 1992).  We review preserved claims of constitutional error under Booker de novo, and will reverse the district court only if the error was harmful. United States v. Cain, 433 F.3d 1345, 1347 (11th Cir. 2005).

### III. Discussion

We will address each of Edouard's claims in turn.

### a. Insufficient Evidence

Edouard claims that insufficient evidence existed for his conviction. Specifically, he argues that the evidence failed to establish beyond a reasonable doubt that he intended to defraud with the counterfeit currency and that, accordingly, the judge erred by denying the motion for acquittal.

To establish a violation of 18 U.S.C. § 472, the government had to prove that Edouard passed or possessed counterfeit currency with the intent to defraud. United States v. Guida, 792 1087, 1095 (11th Cir. 1986).  To prove intent, the government had to show that Edouard knew the notes were counterfeit.  Id.  This "guilty knowledge" may be inferred from circumstantial evidence, and surrounding circumstances may supply inferences of knowledge which adequately prove intent. Id.  One such circumstance is the segregation of counterfeit notes from genuine currency.  United States v. Perez, 698 F.2d 1168, 1171 (11th Cir. 1983).

6

In this case, the counterfeit notes were separated from the genuine notes in Edouard's wallet. Had Edouard possessed only two or three bills, such a fact could be merely coincidence. But here, one compartment of the wallet contained $4,113 in counterfeit bills (in a mixture of $1, $20, $50, and $100 notes) while the other contained $31 in genuine currency.

Further, one of the genuine $1 bills appeared to be marked by an ink pen. Eight of the counterfeit $1 bills bore the same ink mark. These facts, combined with the facts that Edouard had the printer, that the printer's ink was consistent with the ink on the notes, that he insisted that Ishmael give him change from the $50 counterfeit bill, that he was attempting to "break" the larger bills into smaller bills by making small purchases, and that Edouard's story as to how he came into possession of the bills was vague and inconsistent, all support the jury's finding that Edouard intended to defraud. Sufficient evidence, therefore, existed to convict Edouard and the judge did not err by denying the motion for acquittal.

**b. Pro Se**

Edouard contends that the district court erred by denying his request to proceed pro se. Although Edouard had appointed counsel, he first alerted the court that he would like to proceed pro se after the government began its closing statement. The district court denied the request in part because it was untimely.

The Sixth Amendment guarantees a defendant the right to represent himself. Faretta v. California, 422 U.S. 806, 817-18 (1975). But the request to proceed pro se must be timely. Such a request cannot come after the selection of the jury. United States v. Young, 287 F.3d 1352 (11th Cir. 2002). Because Edouard requested to proceed pro se well after the selection of the jury, the district court did not err in denying the request.

**c. Enhancement for obstruction of justice**

Edouard also argues that the district court erred by enhancing his sentence by two points for obstruction of justice. He notes that the probation officer wrote in the PSIR that Edouard deserved a two-point enhancement because he obstructed justice by failing to attend a judicial proceeding and by failing to provide a legitimate address to his Pretrial Services Officer. Edouard claims that because a jury did not hear these facts and find beyond a reasonable doubt that Edouard obstructed justice that the judge committed error under Booker.

The district judge sentenced Edouard at the top of the 12-18 month range. Under Booker, an enhancement based on facts found by the judge that were neither admitted by the defendant or found by the jury violates the defendant's Sixth Amendment right to a trial by jury if the guideline system is mandatory. See U.S. v. Smith, 480 F.3d 1277, 1281 (11th Cir. 2007). Here, Edouard did not dispute the

facts in the PSIR which led to the enhancement (that he failed to appear at a judicial proceeding and failed to provide a legitimate address to his Pretrial Services Officer). Facts in the PSIR that are uncontested are deemed admitted for sentencing purposes. U.S. v. Shelton, 400 F.3d 1325, 1330 (11th Cir. 2005). Because he admitted these facts, there was no Booker violation. Accordingly, the district court did not err.

## IV. Conclusion

For the reasons above, we **AFFIRM**.