PUBLISH

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
04/08/99
THOMAS  K. KAHN
CLERK

---------------------------------------------

No. 97-5509

---------------------------------------------

D. C. Docket No. 96-6011-Cr-NCR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSEPH CATALDO,

Defendant-Appellant.

----------------------------------------------------------------

Appeal from the United States District Court
for the Southern District of Florida

----------------------------------------------------------------

**(April 8, 1999)**

Before TJOFLAT and EDMONDSON, Circuit Judges, and KRAVITCH, Senior
Circuit Judge.

EDMONDSON, Circuit Judge:

Defendant appeals his convictions and sentences for conspiracy to import cocaine and possession with intent to distribute cocaine. We affirm defendant's convictions. Because the Government did not present sufficient evidence to support an obstruction-of-justice enhancement, we vacate the sentences imposed by the district court and remand for resentencing.

## Background

In June 1994, confidential informant Mario Adamo[1] contacted defendant Joseph Cataldo and asked Cataldo if he knew of potential buyers or sellers of cocaine. Adamo told Cataldo that he would pay Cataldo a one- or two-thousand-

---

[1] Adamo was a convicted narcotics trafficker cooperating with the DEA. Adamo had known defendant Joseph Cataldo for years before the events at issue in this case occurred.

dollar commission for each kilogram of cocaine that Adamo bought or sold. Cataldo later introduced Adamo to Bill Ceccoli and George French for the purpose of arranging possible cocaine transactions. Cataldo told Adamo that Ceccoli and French had connections in Belize that would be useful for obtaining cocaine.

In July and August, Adamo and Ceccoli discussed the possibility of importing hundred-kilogram quantities of cocaine into Florida. Cataldo told Ceccoli that, in the meantime, Adamo was interested in selling a smaller amount of cocaine. Adamo and Ceccoli later agreed to a small-scale transaction. That transaction took place in August 1994, when Ceccoli paid an undercover agent, posing as a seller, $30,000 for two kilograms of cocaine. After Ceccoli left with the cocaine, he was stopped by law enforcement agents monitoring the transaction. The agents confiscated the cocaine without Ceccoli's knowledge but did not arrest Ceccoli. Ceccoli believed the cocaine had been

3

stolen; he then contacted Cataldo, who told Ceccoli that Cataldo would speak to Adamo about the situation.

In August and September of 1994, Adamo, Ceccoli, French, and an undercover agent discussed the importation of between 100 and 600 kilograms of cocaine from Belize. Cataldo was present for some of the discussions; and, at one point, he was told by Ceccoli that he could receive an additional commission from Ceccoli for the transactions. The plan ultimately failed because French and Ceccoli were unable to locate a source of cocaine at the terms and quantities they required.

In June 1995, French asked Cataldo to put him in touch with Adamo again because French wanted to buy a kilogram of cocaine. Cataldo arranged for French to meet with Adamo at the hotel where Cataldo was staying. The transaction took place; and afterwards, law enforcement agents again seized the cocaine. French contacted Cataldo and told him that the

4

cocaine had been taken.  Cataldo agreed to attempt to recover the cocaine or the money.  Cataldo thereafter spoke several times with Adamo and made threats against Adamo, whom he believed had set up French and also Ceccoli.

In January 1996, Cataldo was charged by superseding indictment with, among other crimes, conspiracy to import cocaine in violation of 21 U.S.C. §§ 952(a) & 963 (Count I),[2] and possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count IV).  Cataldo pleaded not guilty.  He was convicted on Counts I and IV.

At sentencing, Cataldo sought a mitigating-role reduction in his base-offense level.  The district court found that Cataldo's role in the offense did not entitle him to a reduction.  The court

---

[2]The indictment charged that "Joseph Cataldo, George French, and James R. Boleman knowingly and intentionally combined, conspired, confederated and agreed with each other and with persons known and unknown to the Grand Jury to possess with intent to distribute and to distribute . . . cocaine  . . . ."

also found, over Cataldo's timely objection, that Cataldo had failed to report his full arrest record to the probation officer, who had prepared Cataldo's Presentence Investigation Report ("PSI"), thereby warranting an obstruction-of-justice enhancement. The court sentenced Cataldo within the applicable Guidelines range to concurrent terms of 108 months' incarceration on Counts I and IV.

## Discussion

On appeal, Cataldo challenges both his convictions and his sentences. Only the sentencing arguments warrant discussion.

### I.

Cataldo contends that the district court erred in refusing his request for a reduction of his offense level based on his minimal or minor role in the offense. Section 3B1.2 of the Sentencing Guidelines, "Mitigating Role," designates a range of downward adjustments for a defendant whose role in committing the offense makes him "<u>substantially</u> less culpable than the average participant." U.S.S.G. § 3B1.2, background (1998) (emphasis added). The Guidelines state that a defendant's offense level may be decreased by four levels if he was a "minimal participant"[3] in the criminal activity, reduced by two levels if he was a "minor participant"[4] in the criminal activity, and reduced by three levels if his role fell somewhere in between. U.S.S.G. § 3B1.2.

---

[3]A minimal-role reduction is intended to be used infrequently, U.S.S.G. § 3B1.2, comment. (n.2), "to cover defendants who are plainly among the least culpable of those involved in the conduct of a group," U.S.S.G. § 3B1.2, comment. (n.1).

[4]"[A] minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, comment. (n.3).

At sentencing, the Government characterized Cataldo as a drug broker (bringing buyers and sellers together) and argued that Cataldo should receive a two-level aggravating-role enhancement pursuant to section 3B1.1(c). Cataldo argued that he was entitled to a mitigating-role reduction. The court determined that neither an enhancement nor a reduction was warranted, explaining:

> On his role in the offense it strikes me that he was more than a mere broker. But the Government has testified that his role was that of a broker.
> And a broker is -- in drug deals there is always a danger of over generalization. But they almost never have an aggravating role of being an organizer, leader, supervisor or manager.
> But they also never have a[] minor role or a minimal role.
> They are a classic example of somebody who deserves whatever the standard level is in the sense that they don't get any increase in levels and they don't get any decrease in levels.
> I see nothing in the circumstances of this case to depart either upward or downward in the determination of the levels.

On appeal, Cataldo contends that the district court erred by applying a per se rule excluding brokers from being eligible for a

mitigating-role adjustment.[5]  Cataldo also argues that, given the facts of this case, he is entitled to a reduction based on both his lack of knowledge of the scope of the conspiracy and on his role in relation to his coconspirators.

The defendant bears the burden of proving by a preponderance of the evidence that he is entitled to a mitigating-role reduction.  United States v. Gates, 967 F.2d 497, 501 (11th Cir. 1992).  We review the district court's determination of a defendant's role in the offense for clear error.  United States v. Garrison, 133 F.3d 831, 843 (11th Cir. 1998).

Cataldo is correct that application of section 3B1.2 requires an inquiry into the specific facts of the case.  See U.S.S.G. § 3B1.2, background (stating that section 3B1.2 determination is

_____

[5]To the district court, Cataldo objected to the denial of a downward adjustment but did not specifically object on the ground of a per se rule having been applied.  The Government has not argued that Cataldo has given up the point.  So, for the sake of discussion, we have assumed he has preserved the point.

"heavily dependent upon the facts of the particular case"); see also United States v. Veloza, 83 F.3d 380, 382 (11th Cir. 1996) ("[T]ransporting illegal drugs, in and of itself, cannot, as a matter of law, preclude a defendant from receiving a downward adjustment based on his role in the offense."). The Guidelines also contemplate some comparison of a defendant's conduct to that of his coconspirators. See U.S.S.G. § 3B1.2, comment. (nn.1 & 3) (defining "minor" and "minimal" roles in terms of defendant's conduct relative to that of his coconspirators). But, contrary to Cataldo's argument, the district court judge in this case -- who had presided over the trial and listened to all the evidence -- did not fail to make the necessary inquiry.

The sentencing court did not construe the Guidelines to exclude categorically drug brokers from a minor or minimal role reduction. Instead, the court articulated a kind of rough guide, which he then applied to the particular facts of Cataldo's case. The court expressly noted the "danger of over generalization" --

10

implying that he knew to stop and was stopping short of doing that

-- in stating his general view of a drug broker's role.  In context, we do not read the judge's remarks as allowing for no exceptions.[6]  And the court ultimately made a decision based on "the circumstances of this case," rejecting both Cataldo's application for a reduction and the Government's application for an increase.  We do not understand the record to show that the

---

[6]We cannot accept that a district judge's extemporaneous spoken words of explanation are to be read by appellate judges as if we were reading a statute.  The Supreme Court has said that we are not to read even the Supreme Court's formal, written opinions that way.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993) ("[W]e think it generally undesirable, where holdings of the Court are not at issue, to dissect the sentences of the United States Reports as though they were the United States Code.").  We look at context and at the judge's acts.  And we do not assume that the district judges do not know the law: their ambiguous oral statements, if possible, are interpreted to be consistent with (and not inconsistent with) the law.  The last principle applies with particular force when the district judge never had presented to him an objection aimed specially at his choice of words: the kind of objection that would have allowed him the chance to clarify his statements.

sentencing court, in fact, did apply a hard-edged, per se rule in this case.

We have looked at the facts of this case. The district court did not commit clear error in refusing Cataldo a reduction. Multiple contacts existed between Cataldo and the other participants in the enterprise about the various cocaine transactions. Cataldo, introducing the coconspirators to one another, had a connection to both the source and destination of the drugs. The Government also presented evidence that Cataldo was involved, to some degree, in the large-scale importation scheme. See United States v. Asseff, 917 F.2d 502, 507 (11th Cir. 1990) ("It is evident that defendants-appellants' conduct does not warrant a downward adjustment in sentencing because of their apparent knowledge of their criminal activity and the great amount of cocaine involved."). And he had some knowledge of other proposed and actual drug deals among the coconspirators. Cf. U.S.S.G. § 3B1.2, comment. (n.1). ("[L]ack of

12

knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant.") Cataldo also maintained a financial interest in the transactions.

That Cataldo was less culpable than some of his coconspirators is not plain. But, even if we accept Cataldo's assertion that he had some lesser role than his coconspirators,[7] that fact alone does not necessarily warrant a role reduction in this case. See United States v. Zaccardi, 924 F.2d 201, 203 (11th Cir. 1991) ("Although the PSI indicated that appellant was one of the 'least culpable' defendants, the district court was not obliged on that basis to determine that appellant was a 'minor' participant . . . . It is entirely possible for conspiracies to exist in which there are no minor participants[.]"). Sufficient evidence supports the

_____

[7]Adamo testified at trial that Cataldo's role was limited to making introductions.

court's determination that Cataldo was not entitled to a mitigating-role adjustment.  The court, therefore, did not commit clear error.

II.

Cataldo contends that the district court erred in increasing his offense level two increments for obstruction of justice.  The probation officer preparing Cataldo's PSI recommended the enhancement because he believed Cataldo had failed to acknowledge a 1983 "arrest" in Massachusetts for assault and battery with a dangerous weapon when asked about his arrest history.  Cataldo admits that the did not mention this offense.  He argues, however, that he made no false statement, because he was not arrested on the 1983 charge.[8]

---

[8]Cataldo similarly objected to the probation officer's reliance for the obstruction-of-justice enhancement on four Florida convictions for writing worthless checks.  The probation officer did note that the cases were handled administratively (that is, without an arrest); and the court did not rely on them in

Section 3C1.1 of the Guidelines states "If . . . the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense . . . increase the offense level by 2 levels." "[P]roviding materially false information to a probation officer in respect to a presentence . . . investigation" is a kind of conduct to which the enhancement applies. U.S.S.G. § 3C1.1, comment. (n.4(h)).

The Government has the burden of proving the applicability of a guideline section which would enhance a defendant's offense level. United States v. Shriver, 967 F.2d 572, 575 (11th Cir. 1992). And "[w]hen a defendant challenges one of the factual bases of his sentence . . . the Government has the burden of establishing the disputed fact by a preponderance of the evidence." United States v. Lawrence, 47 F.3d 1559, 1566 (11th Cir. 1995). This burden must be satisfied with "reliable and specific evidence." Id.

applying the enhancement.

Cataldo contends that the Government failed to meet its burden at sentencing because it did not prove that he was arrested on the 1983 charge.[9]

The PSI states that no court documentation or circumstances about the arrest were available on the 1983 offense and that the probation officer was attempting to retrieve documentation from archives. In the Addendum to the PSI, the probation officer further wrote "[t]he court records as to the defendant's 1983 arrest[] in Massachussetts [sic] reflect an arraignment date but not an arrest date."

---

[9]Contrary to the Government's contention, Cataldo did not waive this argument. Some confusion arose during the discussion of the obstruction-of-justice enhancement. But, our review of the record reveals that all parties understood that Cataldo contested the existence of an arrest for the 1983 Massachusetts assault and battery offense, as well as for seven other Massachusetts offenses and the four Florida worthless check charges discovered by the probation officer. See United States v. Hoffer, 129 F.3d 1196, 1202-03 (11th Cir. 1997) ( "To preserve an issue for appeal, an objection must be sufficiently detailed to allow the trial court an opportunity to correct any arguable errors before an appeal is taken.")

At the sentencing hearing, the Government sought to prove the arrest by presenting a computer printout from the Massachusetts courts reflecting, at best, an arraignment date, a conviction and probation for the 1983 charge.[10] The court overruled Cataldo's objection to the enhancement, reasoning "[i]t strikes me that there is enough in the printout that warrants . . . a conclusion [that Cataldo was not truthful] . . . . When you get probation, you have been arrested. Especially when you get

_____

[10]The printout is not in the record. But, we can review this issue based on the representations made in the briefs and on the district court's statements in open court. See United States v. Gutierrez, 931 F.2d 1482, 1491 (11th Cir. 1991). The district court commented on the printout's contents this way:

   My probation officer was showing me a printout
   [from] the courts in Massachusetts in connection with
   this assault and battery with a dangerous weapon.
   And the second count is a probation violation
   although it says, the printout says, arraignment on the
   same date for these offense[s], one from Salem and
   one from Peabody [Massachusetts.]
   And it doesn't contain a whole lot more
   information on that except it shows an award of
   probation.

probation for assault and battery with a dangerous weapon." The court also stated, "I don't know how you could ever get probation in a court without having been arrested."

Although the court's inference may be reasonable, courts "must not speculate concerning the existence of a fact which would permit a more severe sentence under the guidelines." United States v. Wilson, 993 F.2d 214, 218 (11th Cir. 1993).  On the record before us, too much speculation was required.  The printout does not itself suffice as "reliable and specific" proof that Cataldo was arrested on the 1983 charge, in the face of Cataldo's assertion that the charge involved a notice to appear.[11]  The printout is inconclusive on whether Cataldo was arrested.  On appeal, the Government does not contend that the printout is

---

[11]Cataldo's claim is plausible:  Massachusetts law, at least at the present time, indicates a preference for summonses over arrest warrants.  See Mass. Gen. Laws Ch. 276, § 24 (1998) ("Upon a complaint or indictment for any offense, a summons shall issue instead of a warrant, unless, in the judgment of the court or justice, there is reason to believe that the defendant will not appear upon summons.").

direct evidence of an arrest or that it contains information about an arrest which would disprove Cataldo's assertion that the 1983 charge was handled by a notice to appear. The Government never obtained Massachusetts court documents verifying Cataldo's alleged arrest or presented evidence showing that it was more likely than not that the charges against Cataldo involved an arrest. See United States v. Bernardine, 73 F.3d 1078, 1082 (11th Cir. 1996) (vacating sentence and noting absence of evidence in record to clarify ambiguous statement relied upon by Government in seeking enhancement to defendant's sentence).

We therefore conclude that the Government failed to establish that it was more likely than not that Cataldo was arrested for the 1983 charge.[12] That fact is an essential predicate

---

[12]Our opinion bears only on the obstruction-of-justice enhancement. On appeal, Cataldo does not challenge the assessment of one criminal-history point for the 1983 offense; therefore, we do not address that issue.

to the application of the enhancement.  Without it, the court had

no basis on which to conclude that Cataldo gave inaccurate

information, that is, that he obstructed justice.[13]

In the light of Cataldo's objection and the absence of "reliable

and specific" evidence to the contrary, the court erred in applying

the enhancement.  Accordingly, we must vacate the sentences

and remand for resentencing.

---

[13]The basis of the enhancement appears to be the 1983 charge and that is the focus of the parties' arguments on appeal.  But, Cataldo was also convicted in 1963 for assault and battery on a police officer in Massachusetts, as well as six other offenses in Massachusetts.  Cataldo objected to all these charges too, asserting that the Government had not proven he was arrested.  The district court did mention the 1963 charge in ruling on the obstruction-of-justice enhancement.  No computer printout evidences the 1963 charge, but the PSI indicates that Cataldo received three months' probation on that charge.  The court, drawing the same inference he did for the 1983 offense, concluded that Cataldo had been arrested.  To the extent that the court alternatively or additionally relied on the 1963 charge or the other Massachusetts charges, that act was in error for reasons discussed above about the 1983 charge:  the Government failed to prove that Cataldo had been arrested.

For these reasons, we AFFIRM Cataldo's convictions, but we VACATE his sentences and REMAND for resentencing.

AFFIRMED IN PART, VACATED AND REMANDED IN PART.