[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 15, 2008
THOMAS K. KAHN
CLERK

No. 08-11233
Non-Argument Calendar

_____

D. C. Docket No. 07-00080-CR-HL-5

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRANNEN TIDWELL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(October 15, 2008)

Before BIRCH, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Brannen Tidwell appeals his 60-month sentence for counterfeiting U.S.

currency in violation of 18 U.S.C. § 471. On appeal, Tidwell argues that: (1) the

district court incorrectly calculated the advisory guidelines range, and (2) the

sentence imposed was unreasonable. We AFFIRM.

## I. BACKGROUND

Tidwell was indicted on four counts of counterfeiting and forging

obligations of the United States, in violation of 18 U.S.C. § 471, and one count of

possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1)

and 924(a)(2). Tidwell pled guilty to one count of counterfeiting a $50 Federal

Reserve note, and the remaining counts were dismissed on motion of the

government.

According to the undisputed facts in the pre-sentence report ("PSI"), Tidwell

was employed as a commercial truck driver for C&A Transportation.[1] After he

failed to call in for dispatch information on 28 November 2006, company officials

located his abandoned truck in a parking lot in Bibb County, Georgia. In the

process of cleaning out and inspecting the truck so that it could be reassigned to

another driver, they discovered, among other items, a black bag containing a large

amount of cash. The company officials noticed that several of the serial numbers

---

[1] Because Tidwell did not object to the PSI's statement of the facts giving rise to his conviction, he is deemed to have admitted those facts. See United States v. Brown, 526 F.3d 691, 697 n.1 (11th Cir. 2008).

on the bills were the same and that the bills felt different from regular bills. The next morning, they turned the bag over to authorities at the Bibb County Sheriff's Department. The bag was found to contain $1830 in counterfeit notes.

Officers with the Bibb County and Peach County Sheriffs' Departments subsequently executed a search warrant on Tidwell's residence, where they uncovered one sheet of a counterfeit fifty-dollar bill, five sheets of a counterfeit twenty-dollar bill, computer hardware and software used to produce counterfeit currency and checks, and a .12-gauge shotgun, registered to Tidwell's brother-in-law.  Tidwell voluntarily surrendered to authorities two days later. In a written statement given to the Bibb County Sheriff's Department and the U.S. Secret Service, Tidwell admitted making the currency but stated that it was never supposed to leave the residence.  He further indicated that he never passed any of the counterfeit currency himself but his wife passed a ten-dollar bill and a twenty-dollar bill at a Huddle House and truck stop in Tennessee. Tidwell's wife later told agents that if she did pass any counterfeit currency, she was not aware that it was counterfeit.

The probation officer recommended a base offense level of 9, and added two levels because Tidwell manufactured or produced a counterfeit obligation of the United States and possessed a counterfeiting device and materials used for

3

counterfeiting.  See U.S.S.G. § 2B5.1(b)(2)(A) (Mar. 3, 2008).  Because the § 2B5.1(b)(2)(A) enhancement applied, Tidwell's offense level was automatically increased to 15, pursuant to § 2B5.1(b)(3).   Tidwell received a two-level reduction for acceptance of responsibility pursuant to § 3E1.1(a), resulting in a total offense level of 13.

Tidwell received zero criminal history points, placing him in criminal history category I.  The PSI noted, however, that Tidwell was convicted in 1989 on five counts of writing bad checks, and, in a separate case, on two counts of writing bad checks and one count of theft by taking. Although Tidwell was sentenced on 18 May 1989 to concurrent prison terms of twelve months and two years, respectively,  Tidwell never served any portion of his two-year term because the Georgia Department of Corrections was unable to locate him.[2]  At the time the PSI was prepared, Tidwell also had pending state charges for first-degree forgery and obstruction of officers.

With a base offense level of 15 and a criminal history category of I, Tidwell's advisory guidelines sentencing range was determined to be 12 to 18

---

[2] Tidwell also had prior convictions for, inter alia, first-degree forgery in 1988 and 1989, theft by taking of a motor vehicle in 1989, writing bad checks in 1989, possession of a firearm by a convicted felon in 1992, and driving under the influence in 1994.  Because Tidwell received only a fine, probation, or both for these convictions, they did not result in any criminal history points.

months. The probation officer recommended that the court consider an upward departure under § 4A1.3[3] based on Tidwell's 1989 convictions and sentences because Tidwell would have received three criminal history points had he actually served the two-year term. The probation officer also noted Tidwell's pending state charges as a factor warranting a guidelines departure.

Tidwell filed objections to the PSI, arguing first that under Application Note 4 of the commentary to § 2B5.1, the two-level enhancement was wrongly applied, because the bills, which company officials "immediately" recognized as counterfeit, failed to withstand even minimal scrutiny and were thus obviously counterfeit. R1-24 at 1-2; see U.S.S.G. § 2B5.1, cmt. (n.4) (providing that § 2B5.1(b)(2)(A) "does not apply to persons who produce items that are so obviously counterfeit that they are unlikely to be accepted even if subjected to only minimal scrutiny"). Tidwell objected additionally that the unserved two-year sentence did not justify an upward departure because that term, had he served it, would have ended on 18 May 1991, more than fifteen years before the instant conduct began in November 2006 and thus would not have counted toward his

---

[3] Section 4A1.3(a)(1) provides that an upward departure from the applicable guidelines range may be warranted "[i]f reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes."

criminal history category under U.S.S.G. § 4A1.2(e)(1), (3).[4]  R1-24 at 2-3.

At sentencing, the government informed the court that the counterfeit notes had been passed successfully in Franklin, Kentucky; Champaign, Illinois; Atlanta, Georgia; and Murfreesboro, Tennessee, all cities along Tidwell's trucking route. R3 at 7.  Tidwell conceded that some of the notes were passed successfully, but argued that this fact was insufficient to establish the applicability of the enhancement. Id. at 7-8.  He maintained that the fact that it was "immediately apparent" to the company employees, who had no reason to give the notes anything more than minimal scrutiny, that the notes were counterfeit, provided a factual basis for finding the enhancement inapplicable.  Id. at 2-3, 7-8. Without physically examining the counterfeit notes, the court decided that the successful passing of the notes to merchants along Tidwell's trucking route established that the bills withstood at least minimal scrutiny, and thus were not so obviously counterfeit as

---

[4] U.S.S.G. § 4A1.2(e)(1) requires the district court, in computing a defendant's criminal history, to count "[a]ny prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted" as well as "any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period." A prior sentence that does not fall within this time period, however, may not be counted. See § 4A1.2(e)(3).

to remove them from the scope of the § 2B5.1(b)(2)(A). Id. at 7.  The court reasoned that "any merchant who accepts a counterfeit bill at the very least looks at it to determine its denomination.  So that's minimal scrutiny." Id. at 8.

The district court then recounted Tidwell's prior criminal history, including his convictions on multiple counts of first-degree forgery and writing bad checks, theft by taking of a motor vehicle, and possession of a firearm by a convicted felon, accepted the PSI's guidelines range calculation of 12 to 18 months, and sentenced Tidwell to a 60-month term. Id. at 9-12.  The court stated that "[t]he sentence as imposed is an appropriate sentence in this case, . . . based on a variance in order to address [Tidwell's] prior criminal record and [ ] history of fraudulent activity."  Id. at 12.  It further noted that the sentence imposed "complies with the factors that are to be considered as set forth at 18 United States Code Section 3553(a) and adequately addresses the totality of the circumstances." Id.  Tidwell now appeals his sentence.

## II. DISCUSSION

On appeal, Tidwell argues that: (1) the district court incorrectly calculated his guidelines range because the § 2B5.1(b)(2)(A) enhancement, which resulted in a base offense level of 15, was inapplicable; and (2) his 60-month sentence was unreasonable. We address both arguments in turn.

7

A. Applicability of the § 2B5.1(b)(2)(A) Enhancement

Tidwell argues that the government did not meet its burden of establishing the applicability of the § 2B5.1(b)(2)(A) enhancement because it did not prove that the cashiers who accepted the notes subjected them to minimal scrutiny. On the other hand, Tidwell contends, the trucking company officials recognized that the bills were counterfeit immediately upon discovering the bag and had no reason to give the bills anything more than minimal scrutiny. He alleges additionally that the district court erred in failing to physically inspect the bills.

We review the district court's factual findings for clear error and its interpretation and application of the guidelines de novo. See United States v. Foley, 508 F.3d 627, 632 (11th Cir. 2007). For purposes of sentencing, the district court's factual findings may be based on, inter alia, undisputed statements in the PSI or evidence presented during the sentencing hearing. See United States v. Polar, 369 F.3d 1248, 1255 (11th Cir. 2004). The government bears the burden of establishing the applicability of a guideline provision that enhances a defendant's offense level. See United States v. Cataldo, 171 F.3d 1316, 1321 (11th Cir. 1999).

The guidelines require a two-level increase in a defendant's base offense level if the defendant "manufactured or produced any counterfeit obligation or security of the United States, or possessed or had custody of or control over a

8

counterfeiting device or materials used for counterfeiting." U.S.S.G.

§ 2B5.1(b)(2)(A). Accompanying Application Note 4 clarifies, however, that the

enhancement "does not apply to persons who produce items that are so obviously

counterfeit that they are unlikely to be accepted even if subjected to only minimal

scrutiny." U.S.S.G. § 2B5.1, cmt. (n.4); see Stinson v. United States, 508 U.S. 36,

38, 113 S. Ct. 1913, 1915 (1993) ("[C]ommentary in the Guidelines Manual that

interprets or explains a guideline is authoritative unless it violates the Constitution

or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that

guideline."). Because it is undisputed that Tidwell manufactured counterfeit

currency and possessed materials used for counterfeiting, the enhancement applies

*unless* the bills were "so obviously counterfeit that they [were] unlikely to be

accepted even if subjected to only minimal scrutiny." U.S.S.G. § 2B5.1, cmt.

(n.4).

We find that the government met its burden of establishing the applicability

of the enhancement based on the successful passing of the counterfeit notes during

ordinary commercial transactions in Tennessee. We agree with the district court

that a merchant who accepts a bill of currency inspects it at the very least to

determine its denomination, and that such inspection constitutes minimal scrutiny.

See R3 at 8. The district thus did not err in finding that the counterfeit notes

9

withstood minimal scrutiny.

We further note that although Tidwell places great emphasis on the fact that the company employees who discovered the notes observed that they were different in texture than normal bills and delivered them to the sheriff's department the following day, the record is equally clear that the employees inspected the bills at least closely enough to observe that some of them bore identical serial numbers. This fact suggests that the company employees subjected the notes to something more than just minimal scrutiny before concluding that they were counterfeit and thus weighs in favor of, rather than against, applying of the enhancement.

We also reject Tidwell's argument that the district court erred in failing to personally and physically inspect the counterfeit bills before finding that they were not so obviously counterfeit as to come within Application Note 4. Because Tidwell raises this objection for the first time on appeal, our review is for plain error only. See United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005). To prevail under this standard, the appellant must demonstrate an "(1) error, (2) that is plain, and (3) that affects substantial rights." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (per curiam) (citation omitted). "If all three conditions are met, we may exercise our discretion to recognize a forfeited error, but only if the error seriously affects the fairness, integrity or public reputation of

10

judicial proceedings." Id. (internal quotations and citation omitted).

Even assuming, arguendo, that there was an error, Tidwell cannot carry his burden under the second prong of plain error review because he has identified no binding precedent, either from our circuit or the Supreme Court, establishing that a district court is required to physically inspect counterfeit bills before it may reasonably determine that the § 2B5.1(b)(2)(A) enhancement is applicable. See United States v. Aguillard, 217 F.3d 1319, 1321 (11th Cir. 2000) (per curiam) (holding that there can be no reversible plain error with regard to an issue that neither the Supreme Court nor this Court has resolved). In the absence of any controlling precedent resolving this issue, the district court's failure to inspect the bills cannot be plain error.

In light of the foregoing, we cannot conclude that the district court clearly erred in finding that the bills were not so obviously counterfeit as to render the enhancement inapplicable under Application Note 4, nor can we find that it was error to assess a two-level enhancement pursuant to § 2B5.1(b)(2)(A) under the circumstances of this case. Accordingly, we find that the district court properly calculated the applicable guidelines range.

B. Reasonableness of Tidwell's Sentence

Tidwell argues that his 60-month sentence is unreasonable because it is more

than three times the sentence at the high-end of the calculated range (18 months), and ten times what it would have been had the enhancement not been applied (0-6 months).[5] He argues additionally that the district court should not have relied on his prior convictions, which were more than fifteen years old, in fashioning his sentence, particularly since these convictions were not eligible for inclusion in the computation of his criminal history category.

We review a final sentence, whether inside or outside the guidelines range, under a deferential abuse-of-discretion standard. Gall v. United States, 552 U.S. ___, 128 S. Ct. 586, 591 (2007). Under this standard, we will reverse a sentence imposed by the district court only if we find that the district court has made a clear error of judgment, or has applied the wrong legal standard. See United States v. Frazier, 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc)). A sentence may be procedurally or substantively unreasonable, or both. See United States v. Hunt, 459 F.3d 1180, 1182 n. 3 (11th Cir. 2006). A sentence may be procedurally unreasonable if the district court improperly calculates the guidelines range, treats the guidelines as mandatory, fails to consider the appropriate statutory factors,

_____

[5] Had Tidwell not received the two-level enhancement under § 2B5.1(b)(2)(A), his base offense level would have been 9, see § 2B5.1(a), and, taking into account the acceptance of responsibility reduction, see § 3E1.1(a), his total adjusted base offense level would have been 7. With a criminal history category of I, the advisory range would have been 0-6 months of imprisonment.

12

bases the sentence on clearly erroneous facts, or fails to adequately explain its reasoning. See Gall, 552 U.S. ___, 128 S. Ct. at 597. To reasonably determine a sentence, a district court must consider the § 3553(a) factors and "make an individualized assessment based on the facts presented." Id. If a district court determines that a sentence outside the guidelines range is appropriate, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance," and "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." Id.

Once we determine that the district court has committed no significant procedural error, we review the substantive reasonableness of the sentence, which requires us to consider the factors outlined in § 3553(a) and the district court's reasons for imposing the particular sentence. United States v. Williams, 435 F.3d 1350, 1355 (11th Cir. 2006) (per curiam). The § 3553(a) factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to the victims.

13

See 18 U.S.C. § 3553(a)(1)-(7).  "The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court[,]" and "we will not  substitute our judgment in weighing the relevant factors because our review is not de novo."  United States v. Williams, 456 F.3d 1353, 1363 (11th Cir.) (internal quotations and citation omitted), cert. dismissed, 127 S. Ct. 3040 (2007), abrogated on other grounds by Kimbrough v. United States, ___ U.S. ___, 128 S. Ct. 558 (2007); see also United States v. Pugh, 515 F.3d 1179, 1191-92 (11th Cir. 2007) (noting that while unjustified reliance on a single factor, reliance on impermissible factors, or failure to consider pertinent factors may be "symptoms" of unreasonable sentences, a district court does not abuse its discretion when it merely attaches "great weight" to a single (permissible) factor or set of factors).

In evaluating the reasonableness of a sentence, we must take into account the totality of the circumstances, including the extent of any deviation from the advisory guidelines range. See Gall, 552 U.S. ___, 128 S. Ct. at 597. While we may consider the degree of the variance from the guidelines, extraordinary circumstances are not required to justify a variance. Id. at 594-95.  Rather, we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Id. at 597.  The fact that we might reasonably have imposed a different sentence is insufficient to justify reversal. Id.

14

We recognize, however, that the district court's discretion, though considerable, is not unfettered. See Pugh, 515 F.3d at 1191. Thus, we must remand for resentencing where the district court has "weighed the factors in a manner that demonstrably yields an unreasonable sentence," leaving us with "the definite and firm conviction that the district court committed a clear error of judgment . . . by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." Id. (internal quotations and citation omitted).

Upon review of the record, we conclude that the district court's upward variance, though significant, was both procedurally and substantively reasonable. The record reflects that in fashioning Tidwell's sentence, the district court considered the § 3553(a) factors as well as the 12- to 18-month advisory guideline range, heard Tidwell's arguments, and determined that a 60-month term of imprisonment, which is far below the 20-year statutory maximum he could have received under 18 U.S.C. § 471, was necessary to address Tidwell's personal history and the need to promote respect for the law. Specifically, the district court noted Tidwell's substantial past criminal conduct, which included six convictions for fraud- or theft-related offenses and one conviction for possession of a firearm by a convicted felon, and explained that an above-guidelines sentence was

15

"appropriate . . . in order to address [Tidwell's] prior criminal record and [ ] history of fraudulent activity." See R3 at 12.

The district court thus committed no procedural error and demonstrated a reasoned basis for its decision to deviate from the advisory guidelines range. Accordingly, Tidwell has failed to carry his burden of showing that the sentence imposed was unreasonable.

## III. CONCLUSION

Tidwell appealed his 60-month sentence, arguing that his sentence was unreasonable. Because the district court properly calculated the advisory guidelines range, considered the § 3553(a) factors, and articulated its reasons for the chosen sentence, we conclude that it did not abuse its discretion in imposing a sentence that exceeded the guidelines range. Accordingly, Tidwell's sentence is **AFFIRMED.**