[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No.  13-15793
Non-Argument Calendar

_____

D.C. Docket No.:  1:13-cr-00410-TCB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JEAN MARIAT YOGO TOGNIA,

Defendant-Appellant.

_____

No. 13-15908
Non-Argument Calendar

_____

D.C. Docket No.:  1:13-cr-00424-TCB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ELZA CARMELLE TOGNIA,
a.k.a. Chrystel Balove,
a.k.a. Josette Bosue,
a.k.a. Elsa Bouloute,
a.k.a. Elza Conserve,
a.k.a. Elsa Louis,
a.k.a. Anne Marie Mandestina,
a.k.a. Virginie Mlrepa,
a.k.a. Choudline Tidiwele Nzwarth,

                                                      Defendant-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

(September 16, 2014)

Before HULL, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

In these consolidated appeals, Elza and Jean Tognia challenge their 18-month sentences upon revocation of their supervised-release terms, pursuant to 18 U.S.C. § 3583(e).  Elza Tognia ("Elza") argues on appeal that there is insufficient evidence to show that she violated her supervised release by committing new crimes and that her sentence is both procedurally and substantively unreasonable.  Jean Tognia ("Jean") argues that his sentence is substantively unreasonable.  Because the Tognias' appeals are based on the same underlying facts and

procedural history, we begin by explaining this common background and then address the Tognias' separate contentions on appeal.

## I.

Elza and Jean, who are married, were on supervised release following terms of imprisonment for their convictions of conspiracy to commit bank fraud (18 U.S.C. § 1344), in violation of 18 U.S.C. § 1349. Jean also was convicted of aggravated identity theft, in violation of 18 U.S.C. § 1028A. These convictions arose out of a fraudulent check-cashing scheme in which both Tognias participated.

While the Tognias were out on supervised release, a probation officer filed petitions alleging that the Tognias violated the conditions of their release. Specifically, the petitions alleged that the Tognias committed the offenses of mail fraud and conspiracy to commit mail fraud, in violation of 18 U.S.C. §§ 1341 and 1349, among other less serious alleged violations.

At a joint revocation hearing, the government presented evidence of a scheme to defraud Allstate, an insurance company, allegedly perpetrated by the Tognias. According to a fraud investigator at Allstate, the scheme worked as follows: a man with a heavy French-African accent and dialect would call Allstate seeking to open a car insurance policy. The man would pay for the policy's entire premium up front over the telephone, using a bad check. Before Allstate could

discover that the check was bad, the policy would be canceled or altered, such as by removing one car from a multi-car policy, generating a fraudulent refund check. Allstate suffered about $18,000 in losses as a result of the scheme.

Jean admitted at the outset of the hearing that he had made some, but not all, of the calls to open fraudulent policies with Allstate. The policies were opened using aliases that were a variation of the Tognias' names, including Elsa Bouloute, Elza Carmelle, and Jeanne Suis. Elza cashed at least one of the Allstate refund checks. Both Elza and Jean denied that Elza had any knowledge of the scheme.

The district court found that the government had proved by a preponderance of the evidence that both defendants violated the terms of their supervised release as alleged in the revocation petitions. Based on a Grade B[1] violation of supervised release, the court calculated the defendants' sentencing-guideline ranges as follows. With a criminal history category of I, Jean's guideline range was four to ten months' imprisonment, with a statutory-maximum total sentence of 48 months, based on his underlying convictions. With a criminal history category of II, Elza's guideline range was six to twelve months' imprisonment, with a statutory-maximum sentence of 36 months. Both defendants agreed with the court's calculations.

---

[1] The Sentencing Guidelines classify violations of supervised release into three grades. U.S. Sentencing Guidelines Manual § 7B1.1(a). As relevant to this case, Grade B violations include conduct constituting any federal, state, or local offense punishable by a term of imprisonment exceeding one year. *Id.* § 7B1.1(a)(2).

The government requested an above-guideline-range sentence of 18 months' imprisonment for both defendants, based on its position that Jean was the "clear leader" of the scheme and Elza was less forthcoming about her involvement than Jean, although the government acknowledged that Elza was less culpable. In imposing sentence, the court stated,

> There is nothing pleasant about this case. What stands out to the court so much, and speaks so loudly, is that the defendants were both on supervised release for similar conduct at the time these crimes occurred, and it's just unfathomable to me that you can be sentenced to prison by a United States district judge and have the warnings that are always attendant with that, if not expressly by the court, then certainly impliedly by the circumstances and by the terms of supervised release, and then to go out and again engage in the same or similar conduct is reprehensible and, frankly, hard to understand.

Stating that it thought the "government got it right," the district court sentenced both defendants to 18 months' imprisonment with no supervision to follow and later entered an order revoking the Tognias' supervised release.

## II.

We review a district court's revocation of supervised release for an abuse of discretion. *United States v. Frazier*, 26 F.3d 110, 112 (11th Cir. 1994). The district court's factual findings are reviewed for clear error. *United States v. Almand*, 992 F.2d 316, 318 (11th Cir. 1993).

5

**A.**

Under 18 U.S.C. § 3583(e)(3), a district court may revoke a term of supervised release and impose a sentence of imprisonment if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." The preponderance-of-the-evidence standard is met if it is "more likely than not" that the defendant violated a condition of supervised release. *See United States v. Cataldo*, 171 F.3d 1316, 1322 (11th Cir. 1999).

Elza argues that the district court erred in revoking her supervised release based on its finding that she committed the offenses of mail fraud and conspiracy to commit mail fraud. Specifically, she contends that the government failed to prove that (1) she knowingly participated in the fraudulent scheme or conspiracy; and (2) she willfully joined the conspiracy to commit mail fraud. The only evidence presented of her involvement with the scheme, according to Elza, was that she cashed a check issued to her from Allstate, which, Elza argues, alone is insufficient to prove her knowledge of the scheme or conspiracy.

After reviewing the record, we conclude that the district court did not abuse its discretion in concluding that the government proved, by a preponderance of the evidence, that Elza knew of the fraudulent scheme to defraud and willfully joined in the conspiracy to commit mail fraud. *See United States v. Bradley*, 644 F.3d

6

1213, 1238 (11th Cir. 2011) (mail-fraud conviction requires proof that the defendant "intentionally participate[d] in a scheme or artifice to defraud another of money or property"); *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009) (mail-fraud-conspiracy conviction requires proof that the defendant "knew of and willfully joined in the unlawful scheme to defraud").   Although the government presented no direct evidence of Elza's knowledge or state of mind, guilty knowledge may be inferred from circumstantial evidence.  *United States v. Guida*, 792 F.2d 1087, 1095 (11th Cir. 1986) (concerning a conviction for passing counterfeit notes, in violation of 18 U.S.C. § 472, which also requires an "intent to defraud"); *see United States v. Ellington*, 348 F.3d 984, 989-90 (11th Cir. 2003) (conspiratorial agreement may be proved by circumstantial evidence).

The circumstantial evidence presented at the revocation hearing was sufficient for the district court to infer that Elza knew of the fraudulent nature of the $2,202 check from Allstate.  This check was made out to "Carmelle Tognia," Elza's middle and last names and, according to the probation officer, one of Elza's aliases.  The check was sent to the business address for Elza's hair salon, Mannequins, and cashed at a nearby check-cashing store.  In addition, evidence showed that Mannequins, where Elza worked every day, was the listed address for at least one additional Allstate check issued to and cashed by Sergine Civil, a woman who lived with the Tognias.

7

Moreover, at a meeting with her probation officer after the check was cashed, Elza denied any knowledge about an Allstate car insurance policy, and stated that she had car insurance with Permanent General. No explanation was offered by the defense as to why Elza cashed a check issued not to her legal name, but to one of her aliases, from an insurance company with which she admittedly had no active policies on her cars. In light of this record, sufficient evidence existed, under a preponderance standard, to establish that Elza did in fact have knowledge that the check was fraudulently procured from Allstate and that she willfully participated in the scheme by cashing the check.

**B.**

Elza also argues that the district court erred in calculating her guidelines range. Although this argument is stated in terms of the procedural reasonableness of the sentence, it is clear that the argument is merely a variation of Elza's first argument concerning the sufficiency of the evidence. In essence, Elza contends that her guideline range should have been lower because the court improperly found that she committed a Grade B violation: mail fraud and conspiracy to commit mail fraud. But she concedes that the district court's calculations are correct for a Grade B violation. For the reasons already stated, the district court did not err in finding that Elza committed a Grade B violation. As a result, as Elza concedes, the court correctly calculated the guideline range.

8

### III.

We review the reasonableness of a sentence under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 41, 128 S. Ct. 586 (2007); *United States v. Sweeting*, 437 F.3d 1105, 1106-07 (11th Cir. 2006) (applying reasonableness review to a sentence imposed upon revocation of supervised release). In reviewing a sentence outside the guideline range, we may consider the degree of variance and the extent of the deviation from the Guidelines. *United States v. Irey*, 612 F.3d 1160, 1186 (11th Cir. 2010) (*en banc*). The justification given for the deviation "must be sufficiently compelling to support the degree of variance." *Id.* at 1186-87 (internal quotation marks omitted). We will vacate a sentence only if "we are left with the definite and firm conviction that the district court committed a clear error of judgment." *Id.* at 1190 (internal quotation marks omitted).

Before imposing a sentence upon revocation of supervised release, the district court must consider, among other factors, the following: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the applicable guidelines and policy statements; and (4) the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3583(e) (cross-referencing the sentencing factors in 18 U.S.C. § 3553(a)).

9

## A.

Elza contends that her 18-month sentence was substantively unreasonable because the court failed to consider her arguments at sentencing that she had limited if any involvement with the scheme and that she was the main provider for four minor children and would lose her business if imprisoned. According to Elza, the only factor supporting the court's upward variance, her underlying conviction for similar conduct, was already factored into her guideline range through her criminal history category.

In light of Elza's underlying crime for conspiracy to commit bank fraud and the similar nature of the new criminal conduct, we cannot say that the district court abused its discretion by imposing an unreasonable sentence. While Elza maintains that she had limited involvement with the scheme and was determined to be guilty only by her association with Jean, we already have rejected that argument above. Even so, the court acknowledged that Elza may have been less culpable, but it concluded that she was "less forthright about her guilt." Our review of the record also shows that the court considered Elza's arguments in mitigation relating to her children and business, stating, "There is nothing pleasant about this case," immediately after Elza personally presented these arguments to the district court.

10

More generally, the court adequately explained the basis for the sentence it imposed, which took into account the relevant § 3553(a) sentencing factors. For instance, the court explicitly considered the nature and circumstances of the new criminal conduct, especially in relation to Elza's underlying bank-fraud conviction, noting that it was particularly troubled by the fact that Elza had engaged in the same type of criminal conduct for which she previously had been convicted. While the fact of Elza's prior conviction already was factored into her guideline range, the similar nature of that prior conviction to the current offenses was not. The court also agreed that Elza had a history of noncompliance with her probation officer, as well as a higher starting guideline range based on her criminal history. Based on all of these considerations, the district court's decision to impose a sentence above the guideline range was not substantively unreasonable.

**B.**

Jean argues that his sentence was substantively unreasonable because the evidence showed that Elza was more culpable for the Allstate fraud scheme and began with a higher criminal-history category. To sentence them to the same term of imprisonment in light of these facts, he asserts, was an abuse of discretion.

We disagree. The district court did not abuse its discretion in sentencing Jean Tognia to 18 months' imprisonment, an 8-month upward variance from the high end of his guideline range. Although Jean complains about his sentence in

11

relation to Elza's, on the basis that she was more criminally responsible than he, the evidence did not establish that Elza was more culpable than Jean. Significantly, Jean admitted that he made many of the calls to Allstate in order to open the fraudulent policies, and only a male voice was ever heard opening these policies. The opening of the policies by phone was a critical part of the scheme.

Because the court reasonably determine that Jean was more culpable than Elza, it was likewise reasonable for the district court to impose a greater upward variance with respect to Jean's sentence. In addition, as with Elza's sentence, the court adequately explained Jean's sentence and expressly took into account relevant § 3553(a) sentencing factors, including the similarly between Jean's new criminal conduct and his underlying convictions for conspiracy to commit bank fraud and aggravated identity theft. Based on these factors and the evidence presented to the court, we cannot say that the district court's decision to impose a sentence above the guideline range was substantively unreasonable.

**AFFIRMED.**