[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-12222
Non-Argument Calendar

_____

D.C. Docket No. 3:13-cr-00112-LC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SHERMAN G. HOPKINS, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(March 2, 2015)

Before TJOFLAT, WILSON and FAY, Circuit Judges.

PER CURIAM:

Sherman G. Hopkins, Jr., appeals his 48-month imprisonment sentence following his guilty plea to being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).  We affirm.

## I.  BACKGROUND

On March 12, 2013, a deputy with the Escambia County Sheriff's Office ("ECSO") saw Hopkins standing beside the open passenger door of a parked car at an apartment complex in Pensacola, Florida.  When he noticed the deputy, Hopkins immediately closed the car door.  As the deputy approached, several other individuals left the area of the car and walked in different directions.  Hopkins told the deputy he and others were just hanging out.  When the deputy looked into the car window, he saw a plastic baggie containing a white-rock substance, which tested to be .4 grams of crack cocaine.  While retrieving the crack cocaine from the car, the deputy saw underneath the passenger seat a Glock Model 30, .45 caliber gun, loaded with 11 rounds of ammunition.  Hopkins's DNA was found on the gun.  The deputy also found a pocket knife with white residue on it in Hopkins's pants pocket; the white residue tested positive for cocaine.  The deputy additionally found an unspecified amount of cocaine in the driver's door of the car.

On April 19, 2013, an ECSO deputy saw Hopkins and another individual standing under the stairwell of an apartment complex in Pensacola.  After the deputy exited his car, he saw Hopkins walk to and lean toward a large bush beside

2

the stairwell.  The deputy saw Hopkins remove an object from his pocket and drop it into the bush.  The deputy approached Hopkins and saw on the ground below the bush a Jimenez Model JA Nine, 9mm pistol, loaded with eight rounds of ammunition in the magazine clip and one live round in the chamber.  Hopkins's DNA was found on the gun.

On July 25, 2013, an ECSO deputy conducted a traffic stop of a Chevrolet Impala in Pensacola.  As the deputy stepped out of his car, the driver of the Impala ran away.  Hopkins was the passenger in the front passenger seat of the Impala.  An ECSO K-9 unit conducted a walk-around of the Impala; the dog alerted on the driver's side door.  A search of the Impala revealed a loaded Raven Arms handgun with a scratched-off serial number and five rounds of .25 caliber ammunition inside the center console.  Also in the center console, officers found a pouch containing powder cocaine, crack cocaine, marijuana, and a set of digital scales.  The drugs had been separated into plastic baggies commonly used for drug sales.  Inside the glove compartment, officers found another plastic baggie of crack cocaine and marijuana.

A federal grand jury charged Hopkins with two counts of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  The indictment charged Hopkins with having previously been convicted of a felony, knowingly possessing a gun and ammunition on March 12, 2013

3

("Count One"), and knowingly possessing a gun and ammunition on April 19, 2013 ("Count Two"). Hopkins pled guilty to both counts without a plea agreement.

Hopkins had an offense level of 21, including (1) a two-level enhancement under U.S.S.G. § 2K2.1(b)(1)(A), because the offense involved three to seven firearms; (2) a four-level enhancement under § 2K2.1(b)(4)(B), because one of the firearms had an altered or obliterated serial number; and (3) a four-level enhancement under § 2K2.1(b)(6)(B), because he had used or possessed a firearm or ammunition in connection with another felony offense.

Hopkins objected to all three enhancements. He contended the enhancements improperly were based on his uncharged July 25, 2013, conduct and argued there was insufficient evidence he possessed the Raven Arms gun recovered in the Impala. Specifically, he maintained (1) he was a passenger in the Impala, not its owner; (2) he had no knowledge of the gun or the drugs in the center console; (3) the gun was not in plain view; (4) after his arrest, he told law enforcement he had no knowledge of the gun or drugs; (5) no DNA or fingerprint evidence connected him to the gun; and (6) there was no evidence concerning his relationship to the driver of the Impala.

At Hopkins's sentencing, ECSO Deputy Jason Thomas van Ansbach-Young testified for the government and stated he had arrived at the traffic stop on July 25,

2013, after another deputy had called for backup. He had searched the Impala and found the drugs, scales, and gun in the center console, as well as the drugs in the glove compartment. He stated the center console was accessible to someone sitting in the front passenger seat of the Impala, and miscellaneous paperwork with Hopkins's name on it was found in the trunk and throughout the car. Based on his training and experience, the deputy testified the drugs in the glove compartment and center console were packaged in a way that indicated distribution. He stated Hopkins's fingerprints were found on the driver's side-door frame of the Impala, although no fingerprints were found on the Raven Arms gun. Kimberly McGrain, an agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives testified no determination could be made regarding the presence of DNA on the Raven Arms gun.

The district judge overruled Hopkins's objection the government had failed to prove he possessed the Raven Arms gun and found the totality of the circumstances made clear Hopkins "was there involved in drug activity, and has a history of drugs and guns, and that's what was happening that day." R. at 200. He further explained that Hopkins's "imprimatur was all over the car in terms of paperwork, fingerprints, and drug paraphernalia." R. at 200.

Hopkins renewed his objection to the four-level enhancement for use of a firearm in connection with another felony offense, under § 2K2.1(b)(6)(B). He

5

argued the March 12, 2013, offense did not involve drug trafficking but merely the possession of a small amount of drugs.  He acknowledged the district judge might rely on the uncharged conduct from July 25, 2013, to impose the enhancement but maintained he objected to the enhancement and the court's finding he possessed the Raven Arms gun at the July 25 incident.  The judge determined the § 2K2.1(b)(6)(B) enhancement was proper, not based on the drugs found on March 12 but because of the July 25 conduct.

## II.  DISCUSSION

A.    Enhancements    for    Three    to    Seven    Firearms    under    U.S.S.G.
      § 2K2.1(b)(1)(A) and Possession of a Firearm with an Obliterated Serial
      Number under § 2K2.1(b)(4)(B)

On appeal, Hopkins argues the district judge erred in imposing a two-level enhancement under § 2K2.1(b)(1)(A) for possessing between three and seven firearms and a four-level enhancement under § 2K2.1(b)(4)(B) for possessing a firearm with an obliterated serial number, because both were based on the conclusion Hopkins possessed the firearm recovered on July 25, 2013.  The judge, however, identified no facts to support that conclusion.  He contends no evidence showed he knew of or intended to exercise control over the Raven Arms gun, and his mere presence in the vicinity of the gun was insufficient to prove constructive possession.  Hopkins argues the district judge improperly based the conclusion he possessed the Raven Arms gun on his past conduct.

6

For Sentencing Guidelines issues, we review "purely legal questions *de novo*," and a district judge's "factual findings for clear error." *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010). In most cases, a judge's application of the Guidelines to the facts is reviewed with due deference, which is "tantamount to clear error review." *Id.* "For a finding to be clearly erroneous, this Court must be left with a definite and firm conviction that a mistake has been committed." *Id.* (citation and internal quotation marks omitted).

In determining a defendant's specific offense characteristics, a district judge must consider all of the defendant's "relevant conduct," as defined in U.S.S.G. § 1B1.3. U.S.S.G. § 1B1.3(a). "Relevant conduct" includes all acts by the defendant "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." *Id.* § 1B1.3(a)(1)(A). Relevant conduct also includes all acts "that were part of the same course of conduct or common scheme or plan as the offense of conviction." *Id.* § 1B1.3(a)(2).

A defendant receives a two-level increase, if the offense involved between three and seven firearms. *Id.* § 2K2.1(b)(1)(A). Additionally, a defendant receives a four-level increase if any firearm had an altered or obliterated serial number. *Id.* § 2K2.1(b)(4)(B). The government bears the burden of proving the applicability of Guidelines provisions that enhance a defendant's offense level. *United States v.*

7

*Cataldo*, 171 F.3d 1316, 1321 (11th Cir. 1999).  Where the defendant challenges

the factual basis for his sentence, the government must prove the disputed fact by a

preponderance of the evidence with "reliable and specific evidence." *Id.* (citation

and internal quotation marks omitted).  "This burden requires that the trier of fact

to believe that the existence of a fact is more probable than its nonexistence."

*United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir.) (citation and internal

quotation marks omitted), *cert. denied*, 133 S. Ct. 629 (2012).

We have explained that a defendant's possession of a firearm may be actual

or constructive.  *United States v. Perez*, 661 F.3d 568, 576 (11th Cir. 2011).

"Constructive possession of a firearm exists when a defendant does not have actual

possession but instead knowingly has the power or right, and intention to exercise

dominion and control over the firearm." *Id.*  A defendant's presence near a firearm

or mere association with someone else who possesses a firearm is insufficient to

prove constructive possession.  *Id.*  But "[t]he firearm need not be on or near the

defendant's person in order to amount to knowing possession." *Id.* (quoting

*United States v. Wright*, 392 F.3d 1269, 1273 (11th Cir. 2004)).  The government

may prove constructive possession by direct or circumstantial evidence.  *Id.*

Hopkins focuses his argument on whether there was sufficient evidence to

support the district judge's finding he constructively possessed the Raven Arms

gun.  He does not raise an argument that the July 25, 2013, conduct was not part of

the "same course of conduct" as the charged offenses.  In his reply brief, Hopkins states he disputed the factual account of the July 25 incident in his presentence investigation report ("PSI"), in a response to the PSI.  We disagree.  Hopkins's arguments challenge the conclusion that the facts in his PSI sufficiently supported a determination that he possessed the Raven Arms gun.

Hopkins's argument the government failed to prove by a preponderance of the evidence he constructively possessed the Raven Arms gun falls short.  On this record, the district judge's implicit conclusion Hopkins constructively possessed the Raven Arms gun in the Impala does not elicit "a definite and firm conviction that a mistake has been committed."  *See Rothenberg*, 610 F.3d at 624.  Despite a dearth of DNA or fingerprint evidence connecting Hopkins to the Raven Arms gun, there was sufficient circumstantial evidence to support the district judge's implicit finding that Hopkins knew of its presence and intended to exercise dominion or control over it.  *See Perez*, 661 F.3d at 576.  The evidence shows Hopkins was in the front passenger seat and had access to the center console, where the Raven Arms gun was found.  *See id.*  Hopkins's fingerprints were present on the driver's side door frame, and paperwork containing Hopkins's name was found in the car.  The government proved the factual account of the July 25, 2013, incident in the PSI by a preponderance of the evidence with reliable and specific evidence.  *See Cataldo*, 171 F.3d at 1321.  The judge reasonably could

9

have determined Hopkins was aware of the gun and had the ability and intent to exercise control over it later. *See Perez*, 661 F.3d at 576.

Contrary to Hopkins's assertion, the district judge did not improperly base his conclusion Hopkins possessed the Raven Arms gun on Hopkins's criminal history. Although the judge mentioned Hopkins's history, he also had read the PSI, considered the parties' sentencing memoranda, and heard the witnesses' testimony at Hopkins's sentencing. Because the judge did not clearly err in finding that Hopkins possessed the Raven Arms gun, he did not clearly err in imposing a two-level enhancement under § 2K2.1(b)(1)(A) for an offense involving between three and seven firearms. *See* U.S.S.G. § 2K2.1(b)(1)(A); *Rothenberg*, 610 F.3d at 624. Hopkins also has not disputed the serial number had been scratched off of the Raven Arms gun. Since the district judge did not err in finding Hopkins possessed this gun, he did not clearly err in applying a four-level enhancement under § 2K2.1(b)(4)(B).

B.    Enhancement for Possession of a Firearm in Connection with Another Felony Offense under U.S.S.G. § 2K2.1(b)(6)(B)

Hopkins additionally argues the evidence was insufficient to find he possessed a firearm in connection with another felony offense. He contends the district judge improperly imposed a four-level enhancement under § 2K2.1(b)(6)(B). Although the drugs and paraphernalia were found in the same closed console as the firearm, he maintains there was insufficient evidence to link

10

him to those items.  Hopkins does not argue the drugs and paraphernalia recovered from the Impala are insufficient to show that a drug-trafficking offense had occurred.  Instead, he focuses on the sufficiency of the evidence to establish his involvement in any drug trafficking.

The Guidelines provide a four-level enhancement if the defendant "used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense."  U.S.S.G. § 2K2.1(b)(6)(B).  This enhancement applies "if the firearm or ammunition facilitated, or had the potential of facilitating," "any federal, state, or local offense . . . punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained."  *Id.* § 2K2.1, cmt. n.14(A), (C).  The enhancement applies "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia."  *Id.* § 2K2.1, cmt. n.14(B)(ii).  We have explained that "[a] firearm found in close proximity to drugs or drug-related items simply *has*—without any requirement for additional evidence—the potential to facilitate the drug offense."  *United States v. Carillo-Ayala*, 713 F.3d 82, 92 (11th Cir. 2013) (internal quotation marks omitted).

11

The district judge found Hopkins constructively possessed the Raven Arms gun. Additionally, the judge implicitly determined that Hopkins constructively possessed the drugs and drug paraphernalia in the center console, found his "imprimatur" was on the car, and he was involved in drug trafficking activity on July 25, 2013. R. at 200. His conclusion that Hopkins was involved in drug-trafficking activity does not elicit a definite and firm conviction that a mistake was made, given: (1) Hopkins's presence in the immediate vicinity of the drugs; (2) the drugs were packaged in a way that indicated distribution; (3) his ability to access the drugs and scales from his passenger seat; and (4) the finding he was aware of the presence of the Raven Arms gun, which was next to the pouch containing drugs and scales in the center console. *See Rothenberg*, 610 F.3d at 624. Because the Raven Arms gun was found in close proximity to the drugs and scale, it had the potential of facilitating a drug trafficking offense. *See* U.S.S.G. § 2K2.1(b)(6)(B) & cmt. n.14(B)(ii); *Carillo-Ayala*, 713 F.3d at 92. Under these circumstances, the enhancement applies. *See* U.S.S.G. § 2K2.1, cmt. n.14(B)(ii). The district judge did not err in imposing the four-level enhancement under § 2K2.1(b)(6)(B).

**AFFIRMED.**